Argued 14 February; decided 15 April, 1901.

## SOUTHERN OREGON CO. *v.* COOS COUNTY.

[64 Pac. 646.]

NATURE OF ACTS OF ASSESSMENT AND EQUALIZATION.*

1.   An assessor acts judicially in determining the values at which property shall be assessed, and the county board of equalization also acts judicially in revising the assessment: *Steel* v. *Fell*, 29 Or. at p. 276, and *Oregon Coal Co.* v. *Coos County*, 30 Or. at p. 310, approved.

REVIEW OF BOARD OF EQUALIZATION.

2.   A county board of equalization is a tribunal whose decisions respecting the assessment against a taxpayer may be reviewed upon the ultimate facts appearing of record.

INJUNCTION—FRAUDULENT ACT OF ASSESSOR—PLEADING.

3.   A complaint praying for an injunction against a tax based on an assess-

---

*NOTE.—See a collection of authorities on this point in 16 L. R. A. on p. 109.
                                                                    — REPORTER.

ment that is claimed to be fraudulent and arbitrary must show some collusion and unfair action by the county board of equalization, for the assessment has been reviewed and its fairness determined by that board, and its judgment presumably unbiased has superseded that of the assessor. This is particularly true where the board has heard the taxpayer and materially reduced the assessment.

FRAUDULENT ASSESSMENT—OVERVALUATION.

4. An assessment is not fraudulent merely because it is excessive, but a gross overvaluation is presumably intentional and arbitrary: *Oregon & Cal. R. R. Co.* v. *Jackson County*, 38 Or. 589, cited.

EQUITY JURISDICTION—OPINIONS ON VALUE.

5. Where there appears to be an honest difference of opinion among competent judges as to the value of property, and it has not been grossly overvalued, equity will not enjoin the collection of taxes based on the official assessment.

From Coos :  J. C. FULLERTON, Judge.

This is a suit commenced by the Southern Oregon Company against Coos County and its officers to restrain the collection of certain taxes for the years 1893 and 1894. The interlocutory injunction having been made perpetual, defendants appeal.    REVERSED.

For appellants there was a brief and an oral argument by *Mr. S. H. Hazard.*

For respondent there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Rufus Mallory.*

MR. JUSTICE WOLVERTON delivered the opinion.

J. A. James, Assessor of Coos County for the year 1893, assessed the property of the plaintiff, consisting of a large amount of real estate, including a sawmill, buildings and improvements, and considerable personal property, comprising a steamer, rolling stock of a railroad, logs, lumber, money, notes, and accounts, at the sum of $463,791.   This assessment was reduced by the board of equalization and the county court to $332,978.   The tax having been levied, and the roll, together with a proper

warrant, placed in the hands of the sheriff, directing and requiring him to collect such tax by demanding payment of the persons charged in said roll, and by levy and sale of the property, if necessary, the plaintiff, after tendering what is alleged to be all the taxes rightfully due upon a reasonable and just valuation, instituted this suit to enjoin the collection of the balance of the tax so levied. The complaint alleged that the assessor made a pretended assessment of the plaintiff's property, giving a list thereof, but the valuations extended, aggregating $332,978, are such as were affixed thereto after the boards of equalization had equalized the same ; which is followed by a list prepared by plaintiff with the alleged true cash values extended, aggregating $222,850.   Continuing, it further alleges that in making said assessment the said James, as such assessor, did not assess the property of the plaintiff in equal, uniform, or ratable proportion to the assessment of like property similarly situated and of equal value in said county, but, on the contrary, he unlawfully, wrongfully, and fraudulently discriminated against the plaintiff, and placed a valuation upon its said property in excess of its true cash value as indicated by the lists alluded to, and more than upon the property of equal value and similarly situated assessed and valued by him. Beyond this, some irregularities in the assessment proceedings are complained of.   The answer puts in issue the alleged true cash value stated in the complaint, and denies specifically the allegations of fraud on the part of the assessor and of irregularities in the proceedings.   It admits, however, that the assessor may have assessed the plaintiff's real estate for more than its true cash value, but sets forth affirmatively that the board of equalization and the county court, upon the application of the plaintiff, after hearing proofs touching the matter, reduced such assessments so that none of the plaintiff's property

was assessed above its value, or for more than like property was assessed in Coos County. Other issues were tendered, but they are not material to the controversy.

The testimony adduced at the trial tended strongly to show that the assessor acted arbitrarily and capriciously, and without the exercise of his honest judgment, in fixing the valuations of plaintiff's property. Indeed, this may be conceded. It is further shown that the plaintiff appeared before the county board of equalization when it met on the fourth Monday in September, 1893, and applied for a reduction of its assessment. The hearing was continued to an adjourned session of the board held in October, at which time the plaintiff produced a large amount of testimony relative to values as it pertained to its property, which was taken down in shorthand, subsequently extended, and offered and admitted in evidence herein. What took place during the time of these proceedings and at such as were held later is related by D. L. Watson, who was then county judge, and by virtue of his office was a member of the board of equalization. He says : "On the sixteenth day of October we met as a board of equalization, and proceeded to hear claims for reductions of taxes, and to equalize tax assessments for that year, until, I think, the twenty-second or twenty-third of October, during which time we took a great deal of testimony of different parties. The plaintiff was present by its secretary, R. E. Shine, and its general manager,—I think Mr. Smith was there,—and by its attorney, John A. Gray. They furnished the board with what they claimed to be a statement of valuations that should be placed upon its property. The testimony offered was principally for the purpose and with the view of reducing it to about what they claimed it should be assessed at. The board did not agree. There was the clerk ; on matters of reducing the assessments he stood in with the

assessor, and sustained the assessment. My record in the matter, as the record will show, was in a great many cases in favor of reducing the tax. We finally, after sitting from about the sixteenth to the twenty-second day of October, came to the conclusion that the whole assessment of Coos County was too high, as property was then dropping, and the prices paid for property were not as large as the year before. So we made a horizontal cut on all property of twenty-five per cent except goods, wares, merchandise, money, notes, and accounts. There were some small corrections and some reductions made before this on some property of the plaintiff, but it did not amount to much. At the January term of court of 1894 the plaintiff appeared by R. E. Shine and John A. Gray, its attorney, and asked to have the county court re-examine and correct its assessment. The plaintiff at the time submitted its petition, and also the testimony that had been taken by W. U. Douglas at the time it appeared before the board in October for the purpose of reducing its tax. The county court, as a board of equalization, again took up the matter of the assessment of the plaintiff and numerous others, and made such reductions on the valuation of their poperty as we thought best. At that time the county board consisted of S. J. McCloskey, D. E. Stitt, and myself. We examined the assessment so far as we had time to do it, and we found in some instances where property had been, we thought, assessed lower than it should be ; but in many instances we found it assessed at a far greater amount than it should be. We had no time then to give notice, and raise the few assessments or undervaluations, so we let those go, and made such reductions as we thought best on those applicants which appeared before us, among which was the Southern Oregon Company. * * *. It was my opinion, from the testimony before us, and from my personal

knowledge of a great deal of the property of the Southern Oregon Company, that the reductions made by the county court in January reduced the property to what I and the other members of the board considered a fair valuation of it at that time.    *    *    *    We made reductions, I think, of over $100,000 on the assessment of the Southern Oregon Company. After making these reductions, we thought we gave them a fair scale, and that their property was not valued at any greater amount than it should be. That was my opinion, and I think the other members of the board concurred, because they so expressed themselves.    *    *    *    For one, I know I did; and I think Commissioners Stitt and McCloskey acted honestly in the matter, without prejudice or any bias or favor whatever towards any of them.    I believe they valued the property honestly.    They had the testimony offered by the plaintiff and other testimony that was before the board, and their own knowledge, and examined a good deal of the property themselves around Empire City at the time, with the view of coming to a fair valuation of it; and I think they have acted honestly."

D. E. Stitt, one of the county commissioners, and J. J. Stanley, County Clerk and *ex officio* member of the Board of Equalization, also testified that they exercised their honest judgment in equalizing the assessment of the plaintiff's property with that of other property holders in the county.    This is, in substance, all the evidence in the record bearing upon the conduct of the members of the board of equalization and the county court relative to the equalization of plaintiff's assessment.    The remaining testimony, including that which was taken before the board of equalization, consists principally of the opinions of individual witnesses touching the relative valuations of plaintiff's as compared with that placed by the assessor upon other property.    There was testimony

tending to show that in many instances the assessor's valuations of plaintiff's property were much out of just proportion, while in others over assessment was slight in comparison. The boards, however, acting upon this testimony, made large reductions in the assessment, so that the aggregate, including the twenty-five per cent horizontal cut, amounted to $130,113. Plaintiff having prevailed in the court below, the defendants appeal.

The principal question involved in the controversy arises from the contention of the defendants that plaintiff has neither by its pleadings nor by the proofs adduced at the trial made a case entitling it to the relief demanded. The alleged fraud of the assessor in valuing the property of the plaintiff arbitrarily and capriciously, and without the exercise of his fair and honest judgment, constitutes the gravamen of the complaint. There is no attempt to charge that either the board of equalization, or the county court, or any member thereof, while in the discharge of their functions as equalizing boards, acted arbitrarily, capriciously, or dishonestly, or did not conscientiously exercise their sincere and candid judgment in the premises, or that the ultimate and final assessment was not the result of the exercise of honest judgment fairly applied. Nor does the evidence tend to show, even in the slightest particular, such a condition ; so that we are left to determine whether the fraudulent acts of the assessor can alone destroy the validity of the tax assessed against the plaintiff. The board of equalization, composed of the county judge, clerk, and assessor, is authorized by statute to make proper corrections whenever property is assessed under or beyond its actual value : Hill's Ann. Laws, §§ 2778, 2779. This board is required to continue its sittings from day to day until the examination and correction of the assessment shall be completed, but, if such examination be not completed within the week in which

it is required to meet, the duty is then devolved upon the county court at its next term for the transaction of county business, to complete such examination or correction in the same manner and with like effect as the board of equalization is required to do : Section 2781.

1.   It must be conceded that the assessor in fixing and the board of equalization in revising values act judicially : *Steel* v. *Fell*, 29 Or. 272 (45 Pac. 794); *Oregon Coal Co.* v. *Coos County*, 30 Or. 308 (47 Pac. 851).

2.   The board is such a tribunal as that its decisions respecting the assessment of the property of an individual taxpayer may be carried to the circuit court by a writ of review for errors assignable under the writ : *Rhea* v. *Umatilla County*, 2 Or. 298 ; *Poppleton* v. *Yamhill County*, 8 Or. 337.

3.   While it may place property on the roll, and assess the same primarily, when omitted by the assessor (*Bank* v. *Jordan*, 16 Or. 113, 17 Pac. 621 ; *Oregon & Cal. R. R. Co.* v. *Lane County*, 23 Or. 386, 31 Pac. 964), yet its ascribed duties and accorded powers are quite distinct from those which the assessor may exercise. As it respects the assessment, it acts upon what the assessor has done. If the two functionaries agree, no change follows, but, if they disagree, the judgment of the board prevails ; so that its acts and determinations are not dependent upon the acts and conclusions of the assessor, and its judgment supersedes that of the assessor, and stands in its place and stead. As was said in *Kirkwood* v. *Ford*, 34 Or. 552, 554 (56 Pac. 411), "The board is given much larger power than the assessor, being invested with revisory jurisdiction ; so that the act of the board can not be deemed in any sense to be the act of the assessor." Thus it may tran-

spire that the assessment made by the assessor may have been ever so arbitrarily and capriciously made and extended, while those adopted by the board may be eminently fair and equitable. It follows, therefore, logically and necessarily, that, when the assessment is attacked because arbitrarily and fraudulently made, the charge must go further than to inculpate the assessor merely. It must likewise involve the board of equalization and the county court sitting as an equalizing body, as the judgment of the latter is paramount. The necessity of going to this extent is very apparent when it is shown, as in this case, that the complainant appeared before the equalizing board, and procured at its hands a very substantial reduction of the assessment made by the assessor.

It was said in *State* v. *Central Pac. R. R. Co.* 21 Nev. 172, 178 (26 Pac. 225, 1109), Mr. Justice BIGELOW speaking for the court, in response to a petition for rehearing: "A fraudulent overvaluation of property attempted by the assessor can do no harm if it is corrected by the board. If the board bring their honest judgment to bear upon the matter, and determine that the property has not been overvalued, this determination is conclusive that the assessor's attempted fraud has done the defendant no damage." There is no attempt, as we have seen, to charge fraud or caprice against any member of the board of equalization or of the county court, nor is there any proof implicating them in the least; while, upon the other hand, it is abundantly shown that all of the officers comprising these tribunals acted from honest impulses and convictions of right, and that the assessment, as finally completed, was the outgrowth of such discharge of duty.

4. The mere circumstance that an assessment is ex-

39 OR.—13.

cessive, in the absence of fraud, except where it is so gross as to imply fraud, affords no ground for equitable interference : *Oregon & Cal. R. R. Co.* v. *Jackson County*, 38 Or. 589 (64 Pac. 307).

5.    There is a manifest difference of opinion between the witnesses testifying and the board of equalization as to the values, but about these things persons of excellent judgment and insight may honestly differ, and arrive at divergent conclusions.    Hence it is that equity will not interfere where the assessment is the result of honest judgment fairly applied.    Nor does the testimony disclose such a marked disparagement between the values affixed and those which would appear to be just and equal as to suggest fraud or caprice.    "The considerations," says Mr. Chief Justice Lord, "which influence a court of equity to restrain the collection of a tax, are confined to cases where the tax itself is not authorized, or, if it is, that such tax is assessed upon property not subject to taxation, or that the persons imposing it were without authority in the premises, or that they have proceeded fraudulently": *Welch* v. *Clatsop County*, 24 Or. 452, 457 (33 Pac. 934) ; *Hibernian Benev. Soc.* v. *Kelly*, 28 Or. 173, 198 (52 Am. St. Rep. 769, 42 Pac. 3).    Upon the whole, we are impelled to the conclusion that plaintiff is not entitled to the injunction, either by the case made upon the complaint or by the proofs adduced at the trial.    The decree of the court will therefore be reversed, and one here entered dismissing the complaint, at the cost of the plaintiff.

Reversed.