Argued May 29, reversed June 26, rehearing denied September 19, 1917.

# WEYERHAEUSER LAND CO. v. BOARD OF EQUALIZATION.

(165 Pac. 1164.)

**Taxation—Excessive Valuation—Evidence—Sufficiency.**

1. In an appeal from a decision of the board of equalization refusing to lower a tax on petitioner's timber land, *held* under evidence that petitioner failed to establish that the estimates upon which the assessment was based were incorrect or that the land was assessed for more than its cash value.

**Taxation—Assessment—Review by Court.**

2. To warrant a reduction of an assessment upon appeal to this court, it must be shown that the means adopted by the assessor were wrong and that the result arrived at was greater than the actual cash value of the property assessed, in view of Laws of 1913, page 325, section 8, providing that, if the court finds that the assessment was made fairly and in good faith at actual cash value, the assessment shall be approved.

**Taxation—Assessment—Review.**

3. The valuation placed upon property by the assessor for the purpose of taxation is *prima facie* correct, and a party assailing an

assessment as excessive must make it appear that the assessment does not represent the fair value of the property.

[As to remedy of owner of particular class of property assessed at greater per cent of value than other property, see note in **Ann. Cas.** 1914D, 916.]

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

On September 19, 1914, the Weyerhaeuser Land Company filed with the board of equalization of Clackamas County, Oregon, its petition for the reduction of the assessment of certain lands for the purpose of taxation. It is specifically set forth therein in substance that all the property described was assessed at more than its true cash value on March 1, 1914; that the assessment was based on a certain cruise and estimate of the timber on said lands for the county which was incorrect:

| Description of Property. | | | | Assessor's Valuation. | Cash Value Alleged. | Should be Assessed Valuation. |
|---|---|---|---|---|---|---|
|  | Sec. | Tp. | R. |  |  |  |
| All of | 12 | 5 S. | 4 E | $28530 | $14500 | $8700 |
| All of | 14 | 5 S. | 4 E | 33250 | 15500 | 9300 |
| E½ SE¼ of |  |  |  |  |  |  |
| SW¼ | 20 | 5 S | 4 E | 33085 | 13000 | 7800 |
| All of | 24 | 5 S | 4 E | 35950 | 19500 | 11700 |
| All of | 20 | 6 S | 4 E | 17025 | 15500 | 9300 |
| N½ | 26 | 6 S | 4 E | 9120 | 5500 | 3300 |
| All of | 28 | 6 S | 4 E | 15930 | 15000 | 9000 |
| Lots 1, 2, 3, |  |  |  |  |  |  |
| 4 and E½ of |  |  |  |  |  |  |
| W½ | 30 | 6 S | 4 E | 15255 | 13000 | 7800 |

that the assessment should be 60 per cent of the cash value in accordance with the taxation of other timber land in that county and with the uniform system adopted by the assessor. The assessment was made upon the following basis, to wit: One dollar per acre for the real property exclusive of timber; fifty cents per thousand for merchantable yellow fir, red fir, spruce, cedar, larch, and pine timber on such real prop-

erty, and thirty cents per thousand for the merchantable hemlock timber standing upon the lands. The assessment and valuation of the properties was made all in accordance with the amount thereof shown by a pretended cruise and report. Upon a reduction being denied by the board of equalization an appeal was taken by the Weyerhaeuser Land Company to the Circuit Court where, upon a hearing, findings of fact were made and, with the exception of two parcels, the value of the land was adjusted as prayed for in the petition as follows:

| Description of Property. | Sec. | Twp. | R. | Valuation. |
|---|---|---|---|---|
| All of | 12 | 5 S | 4 E | $16170.00 |
| All of | 14 | 5 S | 4 E | 13777.00 |
| E½, SE¼ | | | | |
| SW¼ | 20 | 5 S | 4 E | 17630.00 |
| All of | 24 | 5 S | 4 E | 22673.50 |
| All of | 20 | 6 S | 4 E | 16824.00 |
| N½ | 26 | 6 S | 4 E | 5428.00 |
| All of | 28 | 6 S | 4 E | 15930.00 |
| Lots 1, 2, 3, 4, and | | | | |
| E½, W½ | 30 | 6 S | 4 E | 15255.00 |

From a decree rendered accordingly the county appeals, assigning error in so reducing the assessment.

On November 23, 1912, the County Court of Clackamas County made a contract with M. G. Nease to make a careful cruise and estimate of the timber lands of that county. A bond for the faithful performance of such duty was required and given. Thereafter experienced timber cruisers employed by him cruised the timber on such lands including the property in controversy. With a view to contesting the assessment the Weyerhaeuser Land Company engaged expert cruisers and had the timber on the lands estimated. These men were witnesses in the case and supported their respective cruises by their sworn evidence. Other wit-

nesses also testified in the case. The cruisers for the county qualified as witnesses and testified as to the merchantable timber on the lands in accordance with the following table:

| Description | Stoddard | Hart | Olinger | Clark |
|---|---|---|---|---|
| All of Sec. 12, Tp. 5 S R 4 E | 50,700,000 feet / 8,300,000 feet | | | |
| All of Sec. 14, Tp. 5 S R 4 E | 44,400,000 feet / 34,700,000 feet | | | |
| E½, SE¼ of SW¼ of Sec. 20, Tp. 5 S R 4 E | | 65,734,000 feet / 400,000 feet | | |
| All of Sec. 24, Tp. 5 S R 4 E | | 68,350,000 feet / 3,750,000 feet | | |
| All of Sec. 20, Tp. 6 S R 4 E | | | 31,250,000 feet / 2,535,000 feet | 18,700,000 feet |
| N½ of Sec. 26, Tp. 6 S R 4 E | | | 28,600,000 feet / 3,300,000 feet | |
| All of Sec. 28, Tp. 6 S R 4 E | | | 27,400,000 feet / 6,875,000 feet | |
| Lots 1, 2, 3, 4, and E½ of W½ of Sec. 30, Tp. 6 S R 4 E | | | | |

The gist of the testimony of the witnesses for the company, who qualified as expert cruisers, as to the merchantable timber upon the premises is shown by the following tabulation:

| Description | McCutcheon Fir | McCutcheon Hemlock | Smith | Williams | Hamilton | McDonald |
|---|---|---|---|---|---|---|
| All of Sec. 12, Tp. 5 S R. 4 E | 15,871,000 Ft | 1,465,000 | 30,000,000 ft / 1,775,000 ft | 30,526,000 ft / not seg. | | |
| All of Sec. 14, Tp. 5 S R. 4 E | 12,594,000 ft | 6,520,000 ft | 22,145,000 ft / 6,885,000 ft | 21,721,000 ft / 8,000,000 ft | | |
| E½ SE¼ of SW¼ of Sec. 20, Tp. 5 S R. 4 E | 15,321,000 ft | 368,000 ft | 34,540,000 ft | 31,405,000 ft | | |
| All of Sec. 24, Tp. 5 S R. 4 E | | | 43,675,000 ft / 655,000 ft | 45,375,000 ft | | |
| All of Sec. 20, Tp. 6 S R. 4 E | 5,292,000 ft | 585,000 ft | | | 30,304,000 ft / 3,245,000 ft | 22,030,000 ft / 2,430,000 ft |
| N½ of Sec. 26, Tp. 6 S R. 4 E | | | | | 8,937,000 ft / 2,135,000 ft | 8,130,000 ft / 670,000 ft |
| All of Sec. 28, Tp. 6 S R. 4 E | 18,450,000 ft | 2,365,000 ft | | | 29,103,000 ft / 4,655,000 ft | 26,885,000 ft / 3,695,000 ft |
| Lots 1, 2, 3, 4, and E½ W½ Sec. 30, Tp. 6 S R. 4 E | 12,542,000 ft | 3,330,000 ft | | | 13,806,000 ft / 8,550,000 ft | 15,485,000 ft / 4,325,000 ft |

The different cruisers made notes of the kind and character of the timber, whether thrifty, sound, or defective, and an examination of the logging conditions. They also made a map of the different tracts showing to a certain extent the topography of the country, the different elevations, the streams, etc., and the location of areas where the timber was burned off or for any reason was lacking thereon.

REVERSED.

For Clackamas County and the Board of Equalization thereof, as appellant, there was a brief over the names of *Mr. Gilbert L. Hedges,* District Attorney, and *Messrs. Wilbur, Spencer & Beckett,* with an oral argument by *Mr. Hedges.*

For Weyerhaeuser Land Company, as respondent, there was a brief over the names of *Mr. C. L. Starr* and *Messrs. Littlefield & Maguire,* with oral arguments by *Mr. Edwin V. Littlefield* and *Mr. Starr.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears from the evidence that the assessor who had had four or five years' experience in office, after obtaining the best information that he could, fixed the value of the timber on the lands involved at fifty cents per thousand for merchantable timber, except hemlock which he valued at thirty cents. Some timber in that locality closer in to market he placed at a greater value. His good faith in the matter is not questioned by the taxpayer. While there is little contention here as to the value of the timber per thousand there was considerable evidence introduced on behalf of the property owner to the effect that in the opinion of its experts the timber had no actual, but

only a chance or speculative value on account of its location.   With this claim we are unable to agree.

The following shows the trend of the evidence as to value: For the petitioner evidence was adduced in effect as follows: Mr. W. L. Smith testified that it was a very cheap stumpage and would have to be held for a long time; that he would not want to say it was worth fifty cents per thousand.   George Williams' testimony is in substance that the timber and ground were rough.   The opinion of J. A. Hamilton was shown by his saying that he "would not recommend any man to purchase that amount of timber regardless of price," because the country was rough and hard to log; that in section 20 the cost of logging would more than overbalance the value of the timber; that as to sections 20 and 26 the sum of $9,400 each was more than they were worth; that the latter section in his opinion had no present market value; that no timber on the Molalla River (in the vicinity of which the timber in question is located) had any commercial value at the time he looked at it; that he "would not recommend to any man to put a two bit piece in that country in any section that I cruised."   Alex McDonald stated that to transport the timber probably twenty miles of railroad would have to be built from Molalla; that "the first nine miles is right through the valley and very easy to build"; that up the river it was rocky and there was a 1,200-foot grade to overcome; that twelve or fourteen dollars an acre was enough for the land.   Other witnesses testified to the same purport.   We note this evidence for the purpose of demonstrating that there was a tendency to cry down the worth of the timber.   This is only natural as it is to be expected that a property owner will endeavor to have his property assessed as low as pos-

sible.   We believe from this that agents of the owner
who were working for the purpose of assailing the
assessment would naturally be inclined in the selec-
tion of merchantable timber and in estimating the
amount thereof to minimize the same.

On the other hand on behalf of the county the fol-
lowing is an example of the testimony: Mr. M. F.
McCowan, a cruiser, testifying in regard to the tim-
ber on section 12, stated that it was of a good quality,
worth $1.00 per thousand, and some of it was old but
not very defective.   In regard to section 14 the wit-
ness said that the elevation was high; that " the fir is
not very good.   The lower part, on the creeks, is
better.   But the larch is of a good quality"; that the
logging conditions were "not as good as they were
on 12" but not bad; that it was a down hill pull to
Clear Creek, and a good grade; that the timber was
worth $1.00 per thousand; that as to section 25 the
hemlock and spruce were worth $1.00 per thousand
and the fir $2.00; that the logging was good for haul-
ing the timber to Canyon Creek.

It is shown that the county cruisers, with the ex-
ception of Mr. Hart, who went through a forty-acre
tract twice, cruised the timber by what is termed the
"square method," going through once and measuring
and counting the trees on eight acres of the forty.
The cruisers for the company made a "four-time
cruise" going through a forty-four times thus divid-
ing it into ten-acre strips.   Much stress is laid upon
this method by petitioner as being more accurate.   It
is explained on behalf of the county that a four-time
cruise is better if there is a great distinction in the
different kinds of timber, but that it is no better if
the timber is even.

1, 2. From a careful study of all the evidence and the above tables it does not appear that the difference in the manner of cruising would account for, or cause the radical variation in the amount of timber cruised as between the cruisers for the county and those for the company; nor is it shown that the estimates upon which the assessment was based were incorrect or that the value of the land, of which the timber was an important ingredient or factor in fixing its value, was more than the actual cash value or more than a fair valuation for the assessment as made in that county.

The petitioner undertook to prove that the rating of the kinds of timber mentioned at fifty and thirty cents per thousand was too great. In this it failed. It was incumbent upon it to show that the amount of timber which was the basis of a large part of the assessed value as shown by the cruise made on behalf of the county was too large. This it endeavored to do, but in this it also failed. It is not enough to show that some method other than that adopted by the assessor in making the assessment would be better. In such case it must be shown that the means adopted by that official are wrong and that the result arrived at is greater than the actual cash value of the property assessed. Leaving out of the question the burden of proof as to the value of the property we believe from the evidence that the county's cruise is a fairly accurate estimate conscientiously made by competent men who testified in support thereof, thereby authenticating the count; and that it was fairly and judicially adopted by the assessor who placed a conservative value thereon which, added to the small sum of $1.00 per acre for the land, constituted a valid assessment which has not been successfully assailed by the taxpayer. We are wholly gov-

erned by the evidence in this matter.  To a large extent an assessment depends upon one's judgment.  If the method by which the assessor arrived at the value of the property was correct and the assessment was in good faith fairly made, we are not permitted under the statute as we read it, to pit our judgment as to the value against that of the assessor, although other men of equal ability and fairness might differ in estimating the value of the property.  Injecting another estimate into the consideration of the case would inevitably change the method or system and tend to destroy the approximate uniformity.  The assessor acts judicially, yet his finding as to the valuation is much the same as the verdict of the jury upon a question of fact.

As to the law, the important question involved is largely governed by Chapter 184, Laws 1913, p. 325, Section 8 of which in part directs thus upon an appeal from the action of the board of equalization:

"If, upon hearing, the court finds the amount at which the property was finally assessed by the board of equalization is its actual full cash value, and the assessment was made fairly and in good faith, it shall approve such assessment; but if it finds that the assessment was made at a greater or less sum than the actual full cash value of the property, or if the same was not fairly or in good faith made, it shall set aside such assessment and determine such value."

3. It appears to be a firmly established rule that the valuation placed upon property by the assessor for the purpose of taxation is *prima facie* correct, and a party assailing such an assessment as excessive must make it clearly appear that the assessment does not represent the fair value of the property assessed: *Steel* v. *Fell*, 29 Or. 272 (45 Pac. 794); *Oregon Coal etc. Co.* v. *Coos County*, 30 Or. 308, 310 (47 Pac. 851);

*Southern Oregon Co.* v. *Coos Co.*, 39 Or. 185 (64 Pac. 646); *Elmore Packing Co.* v. *Tillamook County,* 55 Or. 218, 222 (105 'Pac. 898); *Northern Pac. Ry. Co.* v. *Clatsop Co.,* 74 Or. 250, 256 (145 Pac. 271); *People* v. *Davenport,* 91 N. Y. 581; 37 Cyc. 1069, 1104 et seq.

Some clerical errors are mentioned by the assessor in his evidence which should be corrected. It follows that the judgment of the trial court must be reversed and the assessment as made by the assessor of Clackamas County, after correcting the errors named, and as equalized by the board of equalization of that county is approved. Reversed. Rehearing Denied.

Mr. Justice Moore, Mr. Justice Burnett and Mr. Justice McCamant concur.