Argued October 20; affirmed December 15, 1942

In re Assessment Of GeBauer
Apartments

# WASHINGTON-OREGON INVESTMENT CO. *v.* JACKSON COUNTY et al.

(131 P. (2d) 962)

Before Kelly, Chief Justice, and Bailey, Lusk, Rand, Rossman and Brand, Associate Justices.

B. A. *Kliks*, of Portland (Kliks & Kliks and Walter P. Gerber, all of Portland, on the brief), for appellant.

*James G. Smith*, Assistant Attorney General (George W. Neilson, District Attorney, of Medford, and Charles V. Galloway, of Salem, on the brief), for respondents.

BAILEY, J. This is a special statutory proceeding instituted by Washington-Oregon Investment Co., a corporation, for a reduction in the assessed valuation as of March 1, 1939, of certain real property situated in the city of Medford, Oregon.

The first step in the proceeding was the filing of a petition or application, pursuant to § 110-405, O. C. L. A., with the board of equalization of Jackson county for a reduction of the assessed value placed on the property in question by the assessor of that county. That board, acting under authority of § 110-406, O. C. L. A., denied the petition. Thereupon the corporation took an appeal to the state tax commission, in accordance with § 110-609, O. C. L. A. The tax commission denied its request for a reduction and the taxpayer then appealed to the circuit court for Jackson county, as provided by § 110-610, O. C. L. A.; and from the adverse decision of that court this appeal is taken, as permitted by the section last cited.

The statutes governing a proceeding of this nature are substantially the same as those involved in *Appeal of Kliks*, 158 Or. 669, 76 P. (2d) 974, with this excep-

tion: § 69-507, Oregon Code 1930, which was enacted in 1929 (§ 7, chapter 465, Oregon Laws 1929) and remained unchanged until its amendment in 1939 (§ 3, chapter 490, Oregon Laws 1939), provided for an appeal to the circuit court from the order of the tax commission and a further appeal from the decision of that court to the supreme court, but did not designate or limit the questions to be determined by either court in reviewing the action of the taxing agencies. In 1939 § 69-507, Oregon Code 1930, was amended by adding thereto the following:

". . . If on the hearing the court finds that the amount at which the property finally was assessed is its reasonable true cash value and that the assessment is reasonably proportionate to assessed valuations of similar properties in the county, it shall approve such assessment; but if the court finds that the assessment was made at a greater sum than the true cash value of the property, or that such property was assessed disproportionately to other properties in the county, it shall set aside such assessment and determine the correct assessed valuation thereof." (§ 110-610, O. C. L. A.; § 3, chapter 490, Oregon Laws 1939).

By the 1939 amendment only two questions are left open for consideration by the courts, to wit: (1) Was the property involved assessed at a greater sum than its true cash value? And (2) was the assessment reasonably proportionate to the assessed valuation of similar property in the county?

The statute requires that in assessing real property "lands or town lots shall be valued at their true cash value, taking into consideration the improvements on the land and in the surrounding country and also the use and usefulness of such improvements, and any rights or privileges attached thereto or connected

therewith, the quality of the soil, and the natural resources in, on or connected with the land, its conveniences to transportation lines, public roads and other local advantage of a similar or different kind": § 110-335, O. C. L. A. This same section further provides that the "True cash value of all property shall be held and taken to mean the amount such property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power and usefulness under normal conditions." In view of the exhaustive discussion in *Appeal of Kliks*, supra, of what is meant by the "true cash value" of real property as used in § 110-335, *supra*, it is unnecessary again to define that term.

The real property involved in the instant case is described as a tract of land 70 feet by 140 feet, situated at the southeast corner of the intersection of Oakdale avenue and Sixth street in the city of Medford and comprising the west 20 feet of lot 7 and all of lots 8 and 9, block 78, in that city. On this tract of land has been constructed a three-story concrete apartment house approximately 45 feet wide by 132 feet long, known as the GeBauer apartments. The building was constructed late in 1925 and early in 1926, at a cost of over $63,000.

On each of the three main floors of the building are eight apartments, 24 in all, each apartment consisting of a living room, kitchen, bedroom and bath, with hall and closet space. On the ground floor or basement level are five apartments, three of which contain three rooms and the other two are known as "Pullman" apartments, of one room each. One of the three-room basement apartments is occupied by the manager of the building.

Early in the year 1937, Washington-Oregon Investment Co. purchased the property for a total consideration of $54,000. Thereafter, and prior to March 1, 1939, the investment company expended substantial sums of money in repainting and redecorating the interior and exterior of the building, and in addition constructed four of the five apartments located in the basement. The total of such expenditures was in excess of $9,000.

This property was entered on the assessment roll as of March 1, 1939, at a total valuation of $32,890, the land assessed at $3,380 and the improvements thereon at $28,710. The investment company in its petition or application filed with the Jackson county board of equalization asked that the total assessed valuation be reduced to $18,800, with $2,800 as the value of the land and $16,000 as the value of the improvements.

The property in question was assessed in the year 1926 at a valuation of $31,960, of which amount $3,460 represented the land and $28,500 the improvements. The assessed value of the land remained the same until the assessment was made for the year 1938, when it was reduced to $3,380, which was also the amount for which it was assessed in 1939. The assessed value of the improvements was reduced to $18,090 for the year 1932. In 1935 the assessed value of the improvements was reduced to $17,370, and in 1937 it was further reduced to $16,680. For the years 1938 and 1939 the assessed value of the improvements was fixed at $28,710.

The investment company did not apply to the board of equalization for a reduction of the 1938 assessment, probably because of its lack of knowledge of the in-

crease in assessed value in time to make an objection. For the years 1938 and 1939 the assessed valuation of the improvements was approximately 72 per cent higher than for the year 1937. The investment company contends that assessment valuations can not be increased "unless there is actual new value", and that the assessment here under attack is confiscatory in that no new value has been added to the property since 1937. *Great Northern Railway Company v. Weeks*, 297 U. S. 135, 80 L. E. 532, 56 S. Ct. 426, and *Skouras Theatres Corporation v. State Board of Tax Appeals*, 123 N. J. L. 52, 8 A. (2d) 72, are cited in support of those contentions.

In the Weeks case, suit was brought against the state tax commission and the auditors and treasurers of 30 counties in North Dakota to enjoin the "collection of about forty per cent of 1932 taxes laid upon" the railway company's property in those counties. The opinion of the majority of the court reduced the assessed value by $10,000,000, for the reason that the taxing authorities had not taken the general depression into consideration and lowered the valuation accordingly, with the result that the assessment standing against the railway company's property was excessive. There was not involved in that case any question of discrimination in assessment.

The dissenting opinion therein by Justice Stone, concurred in by Justices Brandeis and Cardozo, points out that the court did not find, nor was there any contention, that there had "been any discrimination in the valuation of petitioner's property as compared with that of other property in the state", and that the "decision that the tax is invalid rests on the single ground that the valuation is excessive." It is further

noted in the minority opinion that unless there was discrimination, either intentional or so persistent as to be systematic, resulting in lack of uniformity of taxation, the due process guaranteed by the federal constitution was not transcended. The opinion by Justice Stone contains this significant statement:

". . . But to hold that a tax is unconstitutional because based upon an assessment which is too high, as compared with the value of the same property for purposes of condemnation, overlooks the principle upon which property taxes are laid and collected. Taxation is but a method of raising revenue to defray the expenses of government, and of distributing the burden among those who must bear it. The taxpayer can not complain of the tax burden which he has to bear, who shows no inequality in the application of it. And plainly he does not show inequality merely by proving that the valuation of his property for taxation is much higher than its market or its condemnation value."

We have referred to this dissenting opinion of Justice Stone at some length because of the fact that the reasoning thereof appears to have been adopted by the court unanimously in *Nashville, Chattanooga & St. Louis Railway Co. v. Browning*, 310 U. S. 362, 84 L. E. 1254, 60 S. Ct. 968, wherein the court observed:

". . . But even assuming that there was an over-assessment, constitutional invalidity would not follow. If the needs of a state require higher taxes, the Fourteenth Amendment certainly does not bar their imposition. The maintenance of higher assessment in the face of declining value is merely another way of achieving the same result. Great Northern Ry. Co. v. Weeks, 297 U. S. 135, does not bar the way. That is the only case, and it was decided by a sharply divided court, in which a non-discriminatory assessment was struck down simply because it was thought excessive. Plainly, therefore, the case

must have rested upon considerations peculiar to its own facts."

Much the same thought as embodied in the excerpt from Justice Stone's dissenting opinion hereinabove quoted is expressed by this court in *Appeal of Kliks*, supra, as follows:

". . . Unless the assessment exceeds the property's value the individual taxpayer is not injured by an assessment which is too high or too low, provided the same error in proportionate degree is made throughout the tax levying district. Thus, uniformity is more important to a taxpayer than appraisal in terms of the correct number of dollars."

The opinion in the Skouras Theatres Corporation case is so far from explicit that the exact question decided is difficult for the uninformed reader to determine. It appears from the facts stated that in 1933 the city of Newark assessed the property of the plaintiff at $273,000. The board of tax appeals, after a hearing, reduced the assessment to $249,000. In the following year the city assessed the property at the latter figure. In 1935, however, the city increased the assessment to $256,700, and that assessment was reduced by the state board, with the consent of the city, to $237,100. For the following year, 1936, the assessment was increased to $383,300 and that amount affirmed by the state board. In its opinion therein the court said:

"There is nothing in the record to justify the increase in assessment. One of the witnesses, called for the city, said there was no increase in value between 1935 and 1936. No proof is needed, however, on the point."

The court then stated that after a careful review of all the proofs, it was satisfied that the judgment of

the board of tax appeals should be reversed and that the board should enter a judgment reducing the 1936 tax assessment to the 1935 valuation.

Counsel for the taxpayer in the instant case assert that the holding in that case is to the effect that the assessment of property can not be increased unless there has been an increase in value of the property. That contention seems to be based on what the New Jersey court said in the excerpt last above quoted. We do not regard that case as holding that an increase in assessment is barred unless there has been an increase in value of the property. The conclusion of the court therein is based rather on the fact that the entire record before it did not justify the increase in assessment.

██ The increase in the assessed valuation placed on the GeBauer apartments in 1938 and 1939 over the 1937 valuation does not of itself amount to confiscation of that property, even though there may have been a decrease in its market value. The command of the statute (§ 110-335, *supra*) is that property be assessed at its true cash value. If property is not assessed for more than its true cash value and if the assessment is reasonably proportionate to the assessed valuation of similar properties in the county, the assessment does not violate any constitutional or statutory provision.

We do not believe that the appellant seriously contends that the GeBauer apartments property was assessed for more than its true cash value. Mr. B. A. Kliks, who conducts the business of Washington-Oregon Investment Co., the stock of which corporation is owned by his family, first stated that the property was worth less than $45,000. After discovering some defects in the arrangement and lighting of the rooms,

he testified, he placed the value of the property at about $37,000. We are not aware of any testimony in the case which places the value of the property at less than the assessed value of $32,090.

In 1937 the assessor of Jackson county started to make a re-assessment of all the real property in that county. At that time, according to his testimony, business property in Ashland was assessed on the basis of 42½ per cent of its "sound" value, while residential property was assessed on the basis of 37½ per cent. In Medford the assessment of business property was based on 45 per cent of its "sound" value; and of residential property, 40 per cent. Farm land was assessed at 60 per cent or more of its value.

In that year the assessor called upon the state tax commission to assist him in making the re-assessment. The commission delegated Mr. James E. Bunnell, an appraiser in its employ for eight years, to assist in the work. Due largely to the fact that much of the agricultural land was assessed at 60 per cent of its appraised value, it was decided by the county assessor, in conjunction with the state tax commission, that all real property should be assessed on the same basis of 60 per cent.

The re-appraisal and re-assessment of property in Ashland were completed in 1937; and the re-appraisal of Medford property was completed in time to be used in making the 1938 assessment. The depreciated value of the apartment building in question was placed at $47,840 and the full value of the land at $5,640, together totaling $53,480. For the years 1938 and 1939 the property was assessed on the basis of 60 per cent of that total. The appraisal thus made was checked later, when the matter was pending on appeal before the

state tax commission, by Mr. Arthur A. Selander, the chief appraisal engineer of the commission. Although the values which he placed on some of the items in the construction of the apartment building differed materially from those assigned by Mr. Bunnell, nevertheless his aggregate figures agreed substantially with those of Mr. Bunnell.

In 1931 or 1932 the GeBauer apartments property was appraised by Mr. Edwin S. Woodford, an appraiser of the state tax commission, at the instance of the Jackson county assessor. As a result of the appraisal by Mr. Woodford, the assessed value of the improvements was reduced from $28,500 to $18,090. Both Mr. Selander and Mr. Bunnell testified that in making his computation Mr. Woodford used as a basis 24 rooms instead of 24 apartments of three rooms each, and that he also did not take into consideration the elevator in the building. In support of that testimony there was introduced in evidence the checking sheet used by Mr. Woodford, which shows that in figuring the reconstruction cost of the building Mr. Woodford computed such cost as for 24 rooms instead of that number of apartments. This mistake on the part of Mr. Woodford is said by the respondents to account for the greater increase in the assessment against the GeBauer apartments in 1939 than in assessments against other similar properties in Medford. The great reduction in the assessed value of the improvements in 1932 as compared with that of the previous six years —from $28,500 to $18,090—is some indication that an error might have occurred in making the 1932 assessment.

■ Whether the mistake actually occurred is of very little importance, if, as a matter of fact, the assessment

against the GeBauer apartments for 1932 was dispro-
portionately lower than assessments against other
similar properties in Jackson county. In making the
re-assessment in 1938 it was the duty of the county
assessor to assess all property in his county equally
and ratably: *State ex rel. Galloway v. Watson*, 167 Or.
403, 118 P. (2d) 107; *Appeal of Kliks*, supra.

In instituting this proceeding the investment
company assumed the burden of proving by clear and
convincing evidence that the assessment of its property
as of March 1, 1939, was in excess of its true cash value
or that the assessment was not reasonably proportion-
ate to assessed valuations of similar properties in
Jackson county: *Weyerhaeuser Land Co. v. Board of
Equalization*, 85 Or. 434, 165 P. 1164; *Appeal of Kliks*,
supra, and authorities therein cited. In making the
assessment much depends upon the judgment and
discretion of the assessor. See cases last cited. In this
instance the investment company has not overcome the
presumption in favor of the correctness of the assess-
ment. Taking the evidence as a whole, it sustains the
respondents' contention that the property in question,
comprising both land and improvements, was not
assessed at more than 60 per cent of its true cash
value. We are also of the opinion that the weight of
the evidence compels the conclusion that the assessment
here attacked was reasonably proportionate to the
assessed valuations of similar properties in Jackson
county.

In attempting to show that the property here in-
volved was assessed disproportionately higher than
other properties in the county, the investment company
introduced evidence of the valuation and assessment of
nine business properties in Medford and Ashland, and

two farms. We have given careful consideration to the testimony in the record concerning the actual cash value and the assessed value of each of those properties, and can not see that any good purpose would be served by discussing in detail the propriety of each such assessment. All the properties in Medford and Ashland have been re-assessed according to the same method that was employed in the instance of the GeBauer apartments. The board of equalization of Jackson county, the state tax commission and the circuit court have all gone into this matter and ruled adversely to the investment company's contention. It may be noted also that the attitude of the investment company as to the value of the GeBauer apartments in contrast with some of the similar properties mentioned in the evidence has greatly changed since the inception of this suit, according to the testimony and the correspondence in the record.

The decree of the circuit court is affirmed.

The late Mr. Justice RAND did not participate in this decision.