Motion for stay of enforcement of decree allowed in part, July 17, 1957, motion for order finding that bill of exceptions need not be tendered and filed allowed November 6, 1957. Argued April 9, affirmed as modified May 27, petition for rehearing denied July 15, 1959

# M & M WOODWORKING COMPANY *v.* STATE TAX COMMISSION

# CROWN ZELLERBACH CORPORATION *v.* STATE TAX COMMISSION

(Cases Consolidated)
314 P. 2d 272, 275
317 P. 2d 920, 925
339 P. 2d 718

162

Theodore W. de Looze, Salem, for the motion.

Carmie R. Dafoe, Jr., Portland, contra.

Before LUSK, BRAND and WARNER, Justices.

PER CURIAM.

The appellants, State Tax Commissioners (hereinafter called the Commission), have applied for a stay, pending the appeal, of a decree of the circuit court reducing the personal property taxes of the respondent for the fiscal years 1951-52, 1952-53 and 1953-54. The personal property in question is located in Multnomah County. The decree ordered a refund of taxes paid by the respondent on such property for the years named in excess of amounts found by the circuit court to be correct and ordered "that all officers having possession of the assessment and tax rolls for said years correct said rolls in accordance with this

Judgment." The Commission's motion is in two parts: First, that this court enjoin and restrain "the Sheriff and Tax Collector of Multnomah County, as the officer in possession of the assessment and tax rolls for 1951-52, 1952-53 and 1953-54 from changing or altering such rolls in accordance with the judgment of the lower court"; second, enjoining and restraining "any county assessor, county sheriff and tax collector, county board of equalization and any state agency, board or commission, from changing or ordering a change or alteration in an assessment roll or tax roll of a county, prepared as of January 1, 1957, or any subsequent year, where the change or alteration is for the purpose of allowing a reduction in the assessed valuation of any personal property for a so called 'inflation factor', except for such reductions as are provided by rules and regulations promulgated by the State Tax Commission and in force on the January 1 assessment date."

It is not questioned that the statutes governing appeals in general contain no provisions for a supersedeas in a proceeding like this where the Commission is the appellant.

Respondent has no objection to the first prayer. It cites ORS 306.560 which reads, in part: "No proceeding for levying and collection of taxes on any property shall be stayed by reason of the taking or pendency of any appeal from or review of any order of the State Tax Commission or of the order of the reviewing circuit court," and ORS 306.575, which reads:

"The decision of the circuit court shall be binding on all parties until changed, if at all, by the decision of the Supreme Court. Upon the final determination in the matter, all officers having charge of the rolls on which the assessments involved in such proceeding appear shall correct the same in

accordance with such determination, and taxes shall be refunded or additional taxes collected by the proper officers. If no appeal is perfected to the Supreme Court, the decision of the circuit court shall constitute a final determination of the matter."

It construes these provisions as granting an automatic stay of any change in the tax roll until final determination of the appeal. The respondent's brief says "that the intent and tenor of the above two statutes is such as to provide for the stay which the Commission seeks." It objects, however, to this court issuing a stay on the grounds: First, that it would serve no purpose, and, second, and primarily, because as it is asserted, such an order may be construed by some taxing authorities as an indication that the Supreme Court disapproves of the judgment and does not wish it to be followed for subsequent years. The Commission replies that it has no objection to the adoption of the suggested construction of the statute, "but submits that a ruling is in order."

We deem it inexpedient to announce now a definitive construction of ORS 306.560 and 306.575. Of necessity, neither counsel nor the court have had time to give adequate consideration to the question whether these sections have the effect suggested by the respondent. That question is not free from doubt, and it would be undesirable for less than a majority of the court (which is now in vacation) to pass upon it.

The important question on the merits is whether an assessment of inventory property which denied any reduction in its value for a so-called "inflation factor" was lawful under § 110-335 OCLA (now ORS 308.205) as it read prior to amendment by Oregon Laws 1953, ch 701 § 2 and Oregon Laws 1955, ch 691 § 1. This statute was construed with reference to the

assessment of real property in *Appeal of Kliks,* 158 Or 669, 690, 76 P2d 974, and the construction there adopted was held by the circuit court in the case at bar to be equally applicable to the assessment of personal property. This the Commission contests. In passing upon the present application, however, we indicate no opinion whatever concerning the merits. While it is true that, in some instances, courts may have been influenced by their view of the probable outcome of an appeal in deciding questions of this character, our sole concern here is whether, in view of the interests involved, we should exercise our power to preserve the status quo pending the appeal. See *Blair v. Blair,* 199 Or 273, 287, 247 P2d 883, 260 P2d 960.

■ Upon a consideration of the respective rights of the parties and the public convenience, we have concluded that the Commission's first prayer should be granted. The Sheriff and Tax Collector of Multnomah County is now in possession of the assessment and tax rolls for the years in question, and while he is not named as a party to this litigation, he has been ordered by the circuit court to change the rolls in accordance with the judgment which that court entered. Enforcement of that order will be stayed pending the appeal.

■■ But we have no authority to allow the Commission's second prayer. By it we are asked to control the conduct of taxing officials, county and state, who are not parties to this proceeding and over whom we have no jurisdiction. Neither the constitutional provision requiring uniform rules of assessment and taxation (Oregon Constitution, Art 9, § 1) nor the various statutes which confer on the Commission broad supervisory powers over county equalization boards, assessors and tax collectors (See *State ex rel Smith v.*

*Smith,* 197 Or 96, 252 P2d 550), relied on by the Commission, can be interpreted to invest this court with jurisdiction over persons who are not parties to a particular litigation or subject matter not included within the pleadings in a case. Article 9, § 1 of the Constitution is a mandate to the legislature and the statutes cited define the powers of the Commission, not the courts. The Commission must determine for itself how it shall exercise its delegated powers with reference to taxpayers and taxing officials not involved in this law suit but who may be affected by its outcome. The second prayer will be denied.

An order will be entered in conformity with the foregoing opinion.

## CROWN ZELLERBACH CORPORATION *v.* STATE TAX COMMISSION

Theodore W. de Looze, Salem, for the motion.

Alfred H. Stoloff and Phillips, Coughlin, Buell & Phillips, Portland, contra.

Before LUSK, BRAND and WARNER, Justices.

PER CURIAM.

The appellants, State Tax Commissioners, have applied for an order, pending the appeal, of a decree of the circuit court reducing the personal property taxes of the respondent for the fiscal years 1951-52, 1952-53 and 1953-54.

The question is identical with that this day decided upon a similar application in *M and M Wood Working Company, a corporation, v. State Tax Commission.*

The order will be the same as that announced in that case.

**ON REHEARING**

Robert Y. Thornton, Attorney General for Oregon, and Theodore W. de Looze, Assistant Attorney General for Oregon, of Salem, for the motion.

Sabin, Dafoe & Newcomb, of Portland, contra.

BRAND, J.

In this case the M & M Woodworking Company, hereafter called the taxpayer, appealed to the circuit court from an order of the State Tax Commission, hereinafter called the Commission. The circuit court decided in favor of the taxpayer, and the Commission served and filed notice of appeal to this court. The question for decision at this time is presented by an application filed by the Commission "for an order finding that the

above-entitled cause shall be reviewed by this Court as a case in equity, and that a bill of exceptions need not be tendered and filed in said cause."

In the past we have not considered it appropriate for this court, in response to a motion presented before hearing on the merits, to inform litigants whether we consider the case to be one at law or in equity, or in other words, whether it was necessary for the appellant to tender a bill of exceptions. We are still of the same opinion under ordinary circumstances, but here the situation is unique. Three cases raising the same general question are now before us.

The problem arises by reason of an amendment to ORS 306.570 which was made by Section 1, Chapter 325, Oregon Laws 1957. The amendment consisted of the deletion of one word and the substitution therefor of another. We have placed the deleted word in brackets and have italicized the substituted word to show the change thus made. We quote:

> "Any party to the proceedings in the circuit court, including the State Tax Commission, may secure a review of the order of the circuit court by appeal to the Supreme Court. The appeal shall be taken in the manner provided by law for appeals from the circuit court in other [civil] *equity* cases, except that the time for serving and filing the notice of appeal shall be limited to 30 days from the entry of the order of the circuit court." ORS 306.570.

*J. I. Case Co. v. Chambers,* 210 Or 680, 314 P2d 256, was, as in the case at bar, a proceeding to review an order of the State Tax Commission. The case was decided before ORS 306.570 was amended and when the statute still employed the ambiguous language that appeals shall be taken "as in other civil cases." Both actions at law and suits in equity are civil cases;

—hence uncertainty arose in *J. I. Case Co. v. Chambers* as to the proper procedure. A motion was made requesting this court to rule as to whether the appeal procedure was governed by the rules applicable in law cases or by those in equity. This court denied the motion and the Tax Commission proceeded to file a bill of exceptions upon the assumption that the appeal was governed by the rules concerning actions at law. In our opinion on the merits, speaking of appeals in these tax cases, we said:

> "* * * appeals from the circuit c o u r t to the Supreme Court are governed by ORS 306.570, which provides that appeals to this court shall be taken as in 'other civil cases.' The latter phrase fails to recognize the fundamental differences in appellate review between actions at law and suits in equity; but Rule 1 of the rules of this court provides that the mode of review, w h e n not specifically pointed out by statute, shall be by appeal as in actions at law." *J. I. Case Co. v. Chambers,* supra, 210 Or 680, 314 P2d 256.

Thus the rule of this court was invoked to clarify the ambiguity of the statute.

The effect of the 1957 amendment with regard to appellate procedure is a matter of public importance in tax cases which has a direct bearing upon at least three cases now pending on appeal. We think the question of procedure should now be clarified. The appellant Tax Commission has not yet filed in this court a short transcript, judgment roll or bill of exceptions, if such a bill is necessary, but it has applied for an extension of time within which to make such filings after this court shall have decided the question presented.

■ The respondent in his brief acknowledges that "After the amendment such appeals will be appeals in

equity because the statute now provides that they shall be taken as in equity cases." However, the contention of respondent is that bills of exception "are imposed if the appeal was taken at law, and this one had been taken at law before the effective date of the statute" and therefore it is argued that appellant must file a bill of exceptions and we must treat the appeal as one governed by rules applicable to law actions. It is argued that we would be improperly giving retrospective effect to this statute if we should hold that the appeal is to be treated as one in equity. We reject these contentions. In our opinion the statute properly construed is not retrospective in operation. If the words "the appeal shall be taken" refer to the giving of a notice of appeal without more, then the answer is that the appeal was taken in accordance with statute both before and after the 1957 amendment. The notice of appeal would have been equally good whether the ensuing proceedings were at law or in equity. But we consider it clear that the amendment of 1957 was not intended to, nor did it have, any effect on the giving of notice of appeal. The purpose of the amendment was to clarify or amend the law so as to show that the procedure on appeal is to conform to appeals in equity cases. That legislative intention was expressed by the deliberate change in the phraseology from "other civil cases" to "other equity cases." We read the statute as if it expressly provided that *the procedure on appeal* shall be taken in the manner provided by law for appeals—in other equity cases. If the amendment does not mean this, it means nothing. If after the notice of appeal was given a statute had been enacted which in any way affected the time or manner of giving notice of appeal, an entirely different question would have arisen as to

whether the statute should be given retrospective effect.

The order of events in *J. I. Case Co. v. Chambers,* supra, and in the pending case, demonstrates the difference between the two, and will explain the reason for the 1957 amendment. It is as follows:

15 November 1954 — In *J. I. Case v. Chambers,* Tax Commission decides against the taxpayer.

10 May 1956 — In *J. I. Case v. Chambers,* circuit court decides for the taxpayer.

7 June 1956 — In *J. I. Case v. Chambers,* notice of appeal to Supreme Court filed by the Tax Commission.

18 June 1956 — In *J. I. Case v. Chambers,* appellant Commission files short transcript in Supreme Court.

10 July 1956 — In *J. I. Case v. Chambers,* Supreme Court denies motion of appellant Tax Commission for an order determining whether appeal should proceed as an action at law or a suit in equity.

31 July 1956 — In *J. I. Case v. Chambers,* appellant files a bill of exceptions.

2 July 1957 — In pending case *(M & M Wood Working Co. v. Chambers)* judgment or decree of circuit court entered against Tax Commission.

3 July 1957 — In *J. I. Case v. Chambers,* Supreme Court affirms judgment against Tax Commission.

| 5 July | 1957 | In pending case notice of appeal filed by Tax Commission. |
| 20 August | 1957 | Effective date of the amendment to ORS 306.570. |

From the chronological record of events in these two cases it is apparent that the question as to the nature of the appellate procedure was in litigation prior to 10 July 1956 and nearly six months before the 1957 legislature convened. In fact, the present attorneys in the pending case filed a brief as amici curiae in *J. I. Case Co. v. Chambers.* Undoubtedly the problem concerning appellate procedure which was in dispute in *J. I. Case Co. v. Chambers* was before the 1957 legislature, and explains the legislative intent in the amendment to ORS 306.570.

█ The courts have sometimes differed as to what is meant by "retrospective" legislation. Sometimes they have characterized a procedural statute as retrospective merely because it applies to pending cases, and even though it is to be applied only as to future procedure in such cases. We consider that the 1957 amendment was not retrospective in its operation in this case even though it affected future appellate procedure in a then pending case. But whatever may be the appropriate terminology, we hold that the 1957 amendment makes it clear that Rule 1 of our Rules of Appellate Procedure does not apply to the procedure to be taken in this case and that the procedure to be followed should conform to appellate practice in equity.

In the opinion in *Marks & Co. v. Crow,* 14 Or 382, 387, we said:

"* * * I think the rule should be, where the code is amended pending an action or suit, that the proceedings had in accordance with the provisions

thereof in force at the time should be held valid; and that those taken after the amendment goes into effect should be in conformity therewith. * * *"

Again, we quote from the opinion of Justice ROBERT S. BEAN in *Judkins v. Taffe,* 21 Or 89, 91, as follows:

"But this presumption against retrospective construction has no application to enactments which affect only the mode of procedure and practice of the courts. No person has a vested right in any form of procedure. He has only the right of prosecution or defense in the manner prescribed for the time being, and if this mode of procedure is altered by statute, he has no other right than to proceed according to the altered mode. Indeed, the rule seems to be that statutes pertaining to the remedy or course and form of procedure, but which do not destroy all remedy for the enforcement of the right, are retrospective, so as to apply to causes of action subsisting at the date of their passage. (Endlich on Int. Stat. § 286; Converse v. Burrows, 2 Minn. 229.)

"Statutes which relate to the mode of procedure and affect only the remedy and do not impair the obligations of contracts or vested rights, are valid, and it is no objection to them that they are retroactive in their operation. It is competent for the legislature at any time to change the remedy or mode of procedure for enforcing or protecting rights, provided such enactments do not impair the obligations of contracts or disturb vested rights, and such remedial statutes take up proceedings in pending causes where they find them, and when the statute under which such proceedings were commenced is amended the subsequent proceedings must be regulated by the amendatory act. * * *"

See also, *Brown v. Irwin,* Executrix, 187 Or 462, 212 P2d 729; *Clatsop County v. Oregon American Lumber*

*Co.,* 155 Or 551, 554, 65 P2d 1; *Spicer v. Benefit Association of Railway Employees,* 142 Or 574, 17 P2d 1107, 21 P2d 187; *Simpson v. Winegar,* 122 Or 297, 258 P 562; *Libby v. Southern Pacific Co.,* 109 Or 449, 455, 219 P 604, 220 P 1017; *Darling v. Miles,* 57 Or 593, 111 P 702, 112 P 1084.

■ This case is to be distinguished from those in which legislation has purported to affect the validity of action taken before its enactment. The statute in question did not prejudicially affect the substantial rights of these parties. In this type of case the normal procedure is prescribed in ORS 306.545 to 575. The trial in the circuit court on the "issues in the case" is confined to the record before the court as made in the hearing or hearings before the Tax Commission. It is upon that record that the circuit court makes special findings. No evidence is taken in the circuit court upon those or any issues except that testimony may be taken in court in cases of alleged irregularities in procedure before the commission. The effect which this court shall give to findings of the circuit court or to the findings of the Commission which carry a prima facie presumption of validity is a matter within the control of the legislature subject only to constitutional limitations. Under these conditions a bill of exceptions would have little if any utility even if the proceedings were considered at law rather than in equity. We have before us three cases in which similar briefs have been filed on the question now under consideration. They are *Crown Zellerbach Corporation v. Carl Chambers, Ray Smith and Samuel B. Stewart,* Commissioners of the State Tax Commission; *Oregon Worsted Company v. Carl Chambers, Ray Smith and Samuel B. Stewart,* Commissioners of the State Tax Commission of Oregon; and *M & M Wood*

*Working Company v. Carl Chambers, Ray Smith and Samuel B. Stewart,* Commissioners of the State Tax Commission of Oregon. The only difference between the three cases is that in *Oregon Worsted Co. v. Chambers et al,* the Tax Commission has filed a bill of exceptions but joins with the others in requesting that the case be considered on appeal in this court as one in equity.

The bill of exceptions in the Oregon Worsted case illustrates the needlessness of such a bill in cases of this kind. It recites two stipulations which were filed, the filing of briefs, the special findings of fact, conclusions of law, the opinion of the circuit court, the complete transcript of testimony "made at the hearing before the Commission", and all exhibits introduced at such hearing. All of this material could be brought before this court without a bill of exceptions under our present rules, no testimony having been taken in the circuit court. See Rules 3, 12 and 35.

■ The real conflict between the parties is this: One desires that this court be bound by the findings of fact made by the trial judge, if supported by substantial evidence. The other desires that this court be at least as free in its consideration of the record made before the Tax Commission as we are in appeals in equity. We see no valid reason why the legislature cannot define our function with respect to this matter as to cases in which the notice of appeal has been filed before the enactment of the statute if the record has not yet received the consideration of this court on appeal. We hold that a bill of exceptions is not necessary to a consideration of the record in this court under the clear intent of ORS 306.570 as amended in 1957.

## CROWN ZELLERBACH CORPORATION *v.* STATE TAX COMMISSION

Robert Y. Thornton, Attorney General for Oregon, and Theodore W. de Looze, Assistant Attorney General for Oregon, of Salem, for the motion.

Phillips, Coughlin, Buell & Phillips, of Portland, contra.

BRAND, J.

This case presents the same question which has this day been decided in *M & M Wood Working Company v. Carl Chambers, Ray Smith and Samuel B. Stewart,* Commissioners of the State Tax Commission. The result here is controlled by that decision. The cause will be reviewed on appeal by this court according to our appellate practice in equity suits.

Theodore W. de Looze, Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Carmie R. Dafoe, Jr., and Alfred H. Stoloff, Portland, argued the cause for respondents and cross-appellants. On the brief were Sabin, Dafoe & Newcomb and Phillips, Coughlin, Buell & Phillips, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, LUSK, WARNER, SLOAN and MILLARD, Justices.

SLOAN, J.

The defendant commissioners appeal from an adverse judgment of the circuit court for Multnomah County. The two cases were consolidated for consideration by the trial court and upon this appeal. The facts and issues presented in each case are substantially identical. The cases involve assessment and collection of personal property taxes within Multnomah County for the years 1951-52, 1952-53 and 1953-54. For convenience we will refer to the given years as 1951, 1952 and 1953. We will refer to petitioners-respondents as taxpayers and to the defendants-appellants as commission. The taxpayers also present a cross appeal from a determination of the circuit court adverse to them. The issue we are called upon to decide is the basis of the determination of value of taxpayers' personal property adopted by the county assessor of Multnomah County for the years in question. These appeals are to be determined as appeals in equity. M & M Woodworking Company v. State Tax Commission, 217 Or 167, 317 P2d 920.

It will facilitate the explanation of this issue to indicate the statutes relating to the assessment in question. The statutes as found in OCLA applied to all the years in question.

Section 110-335, OCLA, as amended by ch 440, Oregon Laws 1941, required all real and personal property within the respective counties to be assessed as of January 1 of each of the years in question. Section 110-348, OCLA, required that personal property was to be assessed "at its true value in cash * * *." True value in cash is defined, in § 110-335, OCLA, as "taken to mean the amount such property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power and usefulness under normal conditions." Section 110-821, OCLA, as amended by ch 577, Oregon Laws 1951, is referred to as the "Omitted Property Statute." It is the section with which we are primarily concerned. It generally provides for the methods of assessing property which was omitted from the assessment roll in any given year. The 1951 amendment precipitated the present, as well as much other, litigation. It provided as follows:

"* * *. Whenever the officer having possession of the roll shall discover that the valuation as of the day of assessment, of any merchandise stock in trade, exceeds the valuation as stated in the taxpayer's return thereof and the true cash value as found by the assessor, such excess shall be presumed to be omitted property subject to additional assessment as provided herein."

The county assessor of Multnomah County seized upon the 1951 amendment to engage in a widespread reassessment of personal property in Multnomah County.

We are here concerned with his application of this statute to these taxpayers.

In regard to the years 1951 and 1952 each of the taxpayers had reported to the Multnomah County assessor all the personal property owned by them situate in that county. The property was assessed in the manner provided by statute and the taxes paid upon the assessment as made. The personal property owned on the assessment date of each year by taxpayers M & M Woodworking Company consisted of logs and other raw material, work in process in various states of completion and finished products in the form of doors, plywood and lumber. Crown also owned logs, but its work in process was the conversion of raw paper to wax paper and its finished product within Multnomah County was wax paper in various forms. In 1953 the county assessor initiated a wide scale program of reassessment of so-called "omitted property," which we have mentioned. In May and June of 1953 each of the taxpayers received notice that the value of the property as originally assessed for 1951 and 1952 was less than its then true cash value. The assessor asserted that the difference in value was "omitted property" in accordance with the assessor's interpretation of the 1951 amendment, above quoted. He thereby materially increased the amount of the assessment as to each taxpayer and additional taxes for 1951 and 1952 were levied in accordance with the increased assessment. The taxes were paid under protest and the taxpayers appealed to the State Tax Commission as provided by the above statute.

Concurrent with this process of reassessing taxpayers' personal property for 1951 and 1952, the assessor applied the same measure of value to the taxpayers' then current assessment for the year 1953. In

this instance the taxpayers appealed to the Board of Equalization for Multnomah County and that board sustained the value as fixed by the assessor. Accordingly each taxpayer filed an appeal to the State Tax Commission. The appeal to the commission embraced the assessments for all three years in one proceeding in respect to each taxpayer. A separate hearing was held as to each taxpayer before a hearing officer, but some of the record was duplicated in each case. The commission sustained the assessor except for certain modifications not material to our disposition of this case. The taxpayers then appealed to the circuit court for Multnomah County and that court set aside the order of the Tax Commission and allowed refunds, plus interest thereon, to each taxpayer.

Several issues were presented to the trial court by both parties and renewed here. Our view of the case requires that we consider only one; that is, the basis employed by the assessor to establish his version of the true cash value of the property of the taxpayers for each of the years in question. To make this determination the assessor simply caused an accountant to examine the books of the taxpayers as of the assessment dates for 1951 and 1952. The assessor found that the book value was greater than the value previously assessed for those two years. Without consideration of any other factor the assessor concluded that book value in each instance was the equivalent of true cash value as defined by the statute. We thereby reach the crux of these cases. The assessor, and now the commission, insist that book value is the statutory true cash value without regard to any other factor. They ask that we so hold as a matter of law. For reasons to be related we cannot concur.

■ We approach the commission's position first from the point of view of uniformity of taxation. It appears fundamental that uniform and equal assessment and taxation of property of equal value is an essential of our constitutional limitations on taxation, Oregon Constitution, Art IX, § 1; and of statutory restrictions: § 110-101, OCLA. "The ultimate objective of appraisement and assessment is to bring about the distribution of the cost of government in just relationship to the value of each taxpayer's property." *Appeal of Kliks,* 158 Or 669, 685, 76 P2d 974. *Ellis v. Frazier,* 38 Or 462, 63 P 642, struck down legislation imposing a tax of $1.25 on each bicycle in certain counties:

> "* * *. The value of all bicycles not being the same, the tax of $1.25 levied upon each destroys the required uniformity in assessment and renders the rate of taxation unequal, so that the tax in this respect violates the constitutional provision above quoted [Art IX, § 1]."

■ To apply these principles to the case in hand requires reference to the evidence. The record is clear that there is no uniformity within the timber industry as to the methods of accounting and in the manner by which costs are reflected on the books of various companies, including these taxpayers. Of greater importance, there is wide variation in the cost of raw materials, primarily logs, which variation is likewise reflected in the respective books of these and other taxpayers. Both common knowledge and the evidence establish that the cost of acquisition of logs did sharply fluctuate during the years in question, which, of course, is a material factor in value as reflected in the books. Equal, or perhaps more, diversity of cost is found in the time and manner of acquisition. For example, the

evidence would establish that frequently these concerns would acquire a tract of timber on a cruise basis. In other words the purchase price of the timber would be governed by the estimated amount in the given tract or block of timber, for example 10,000,000 feet. If, in fact, it developed that there was an excess amount of timber which was harvested after the removal of the estimated amounts, it would be entered on the books of the acquiring company at zero cost. On the other hand, timber acquired at the same time in the open market or from other sources could have an acquisition cost of as much as $125 per thousand in the extreme. Lesser differences were common. Timber acquired prior to the sharp advance in timber prices in the late forties would, of course, show a substantially different cost from that acquired on the current market in 1951 and 1952. Thus, on the assessment day of each year logs of equal quality and the same specie would appear on the books at substantially variable costs.

 It is, therefore, apparent that on any given assessment day one taxpayer could have log rafts in hand with a very low cost, while the owner of the raft nearby with substantially similar logs could have acquired them at medium or high prices. In either event the use of book value would not afford a uniform or equal basis of assessment and taxation. It should appear equally clear that this variation in cost of the raw material must appear in each step of processing to the state of completion.

It can be said with equal force that such a method of valuation could not comply with the statutory definition of true cash value. This definition may bear repeating: "* * * the amount such property would sell for at a voluntary sale made in the ordinary

course of business, taking into consideration its earning power and usefulness under normal conditions." § 110-335, OCLA. As we have indicated, the application of book value allows no differential for different costs for the acquisition of logs. The same is true of the bookkeeping methods employed by these and other taxpayers to record costs of transportation, scaling, costs of logging roads and other material factors that enter into eventual total cost. The evidence reflects that one company may charge these costs into its cost of logs; others would separately capitalize certain of these expenditures. Each such difference would reflect different value in the books of the given company. Taxpayer M & M Woodworking Company operates some of its plants upon a profit-sharing basis. It was thereby required to make book adjustments and allocate costs for logs processed in those plants in a manner substantially different from that for logs and materials processed at other plants.

On a given assessment day a hemlock log of given scale and grade would have a relatively determinable true cash value as above defined. From what has been said it is obvious that such value could be, and the evidence indicates it frequently is, materially different from the cost of a log of equal quality on the books of either taxpayer. This variation in cost of logs, together with variance in the cost of processing, also in evidence, would reflect in the book cost or value of the finished product. Thus a given quantity of plywood or paper may have cost one taxpayer $100 per unit and another taxpayer $80 per unit. Yet, to adopt the commission's theory we would be required to say to each, the true cash value is $100 to one and $80 to the other.

The commission attempts to justify its position by contending that taxpayers conceded that the book value did coincide with true cash value with reference to certain of the items listed as finished goods. The taxpayers respond by saying the same coincidence might prevail if the assessor drew numbers from a hat to fix the valuation. The commission attempts to justify the result, however, by referring us to certain language in *Knappton Towboat Co. v. Chambers,* 202 Or 618, 629, 207 Or 702, 276 P2d 425, 277 P 763. The quotation from the Knappton case relied on by the commission is simply as follows:

> "In the case of *Bailey v. Megan,* 102 F2d 651, 654, it is stated:
> " 'If the result arrived at was clearly within the permissible limits of their discretion, the particular method used would seem unimportant. If the result was clearly wrong, the method used would not save it.' "
> And in *Grand Trunk Western R. Co. v. Brown,* 32 F Supp 784, 792, the court said:
> " '* * * Furthermore, we are convinced that there is no cut and dried formula that the Tax Commission is obliged to follow, nor is there any percentage it must use. The question lies solely in the result, which must not culminate in gross injustice or over-assessment.' "

Even if the language just quoted, without more, would apply it still is of little avail to the commission. Here, as we have seen, the very method used to determine value produces a poor result. However, in the Knappton case it is to be observed that this court there held that the taxpayer had not sustained the burden imposed upon him in that proceeding of showing its method of determining value was more accurate than

the one employed by the commission. Each measure of value considered by the court was the component of many factors. That case is not authority to establish that a happenstance good result from a poor method will validate an assessment so made. Preceding the language quoted, this court, by Justice PERRY, said:

"* * *. Therefore, in any assessment relative to true cash value there must be a basic study of the matter assessed, which information, combined with judgment as to the weight to be given to each element or factor affecting value, results in a finding of the true cash value."

The commission also argued that: "In companies the size of petitioner's, the accountants are well aware of standard practices used, and make every attempt to adhere to these practices * * *"; that accordingly the books are kept on a "cost or market, whichever is lower" basis and that the values reflected in the books are, therefore, conservative. The evidence before us refutes such a contention. The evidence reflects that there is no standardized practice of accounting method within the industry. We have already referred to the differences of accounting methods utilized by these taxpayers and others. Thus, the evidence establishes that a given pile of veneer or a given quantity of raw paper may have varying book values not only by reason of varying costs of raw materials, but also by reason of varying methods of allocating costs within the accounting system of the particular manufacturer.

■ The commission has cited us to no authority, either at law or in the technical fields of assessment and valuation, which sustains its position. The previous decisions of this court that touch on the subject would establish a contrary view. *Ankeny v. Blakley,*

44 Or 78, 74 P 485, was a case involving the assessed value of bank stock. It was there contended that book value should be the test of value rather than "true cash value" as required by the statute for assessing personal property. The court declined to adhere to this theory and considered other factors in determining true cash value. The opinion is persuasive that book value and true cash value are not synonymous. *Citizens' Nat. Bank v. Board of Equalization,* 109 Or 669, 222 P 341, is a similar case. It is there held that the amount invested in real estate by the taxpaying bank is not conclusive in determining the true cash value of such real estate.

*Tax Com. v. Consumers' Heating Co.,* 207 Or 93, 294 P2d 887, involved the valuation of a central heating plant in Klamath Falls. It was acquired by the taxpaying owner at a very low cost. The commission in that case resisted, and the court sustained, the attempt of the taxpayer to value the plant at its cost or book value.

The facts in *J. I. Case Company v. Chambers,* 210 Or 680, 314 P2d 256, closely parallel the facts of this case. In that case the county assessor of Multnomah County had reassessed a stock of parts and supplies maintained by the taxpayer to supply retail repair outlets of the taxpayer. The assessor utilized the same valuation method in that case as in this. He took book value of all such parts, said this is true cash value, pay. The evidence in the case disclosed that a substantial portion of the inventory was obsolete parts maintained to provide repair parts for old machines still in service. The value of this inventory of obsolete parts could not equal the amount for which they were

carried on the books. In that case the court decided three issues that are particularly controlling here:

(1) That the commission has the burden of proving that the original assessment was not correct;

(2) That "We are unable to say, as a matter of law, with what frequency book value might happen to coincide with true cash value. But we are convinced that a manufacturer's factory cost, when applied to an entire inventory, some items of which have been unsalable for many years, does not reflect true cash value. We agree that such cost may be evidence of value, but we cannot approve it as the sole measure of value in the face of substantial evidence of obsolescence"; (210 Or at 708)

(3) "That when the county (and thereafter the commission) chose to rely exclusively on petitioner's factory cost, and petitioners showed that its factory cost did not make proper allowance for obsolescence, the taxing authorities failed to overcome the presumption in favor of the original assessment. In the absence of proof of an undervaluation, the original assessment must stand." (210 Or at 711)

It is true, of course, that the court is not now concerned with obsolescence. However, the principle is identical. Here the assessor has, by the selfsame process, assessed an entire inventory at book value, or cost, without regard to the deviations that did exist. The evidence we have mentioned is conclusive that the factors causing this deviation from true cash value in this case are as material and recognizable as obsolescence in the Case decision.

■ In the *Appeal of Kliks,* supra (158 Or 689), Jus-

tice ROSSMAN said: "True cash value ordinarily means the sum which an owner should receive in the event his property is taken through the exercise of the power of eminent domain, or the amount which a public utility, if owner, could employ in establishing a rate base." Consequently we have extended our research into these fields of valuation as well as into the areas of the law concerning estate valuations, valuation of stocks of unlisted companies, valuation of loss for insurance purposes and similar problems. In no instance have we found authority, either by court or recognized accounting or appraisl rules that utilize book value, as such, as the equivalent of true cash value. In fact, the most clear-cut expression we have been able to find on the subject is in the 1951 Annual Proceedings of the National Association of Assessing Officers. In a paper given by the Tax Commissioner of the state of Connecticut we find this comment:

> "It is true that within the frame-work of good accounting theory there is room for variation in handling items on the books, and some books do not follow in all cases the dictates of accounting theory. Therefore, a formula which will cut through these differences and assemble values in accordance with uniform rules is far better than blindly assuming that whatever figures appear on the books must be correct and proper."

It was aptly stated in *Case v. Chambers,* supra, that we cannot say as a matter of law how frequently book value may coincide with true cash value. We hold that it does not meet the statutory requirement in these cases.

We have previously held that the commission bore the burden of proof for the assessment years of

1951 and 1952. The same would not be true for 1953, which was an appeal from an original assessment. In such a case the assessment is presumed proper and the taxpayer must bear the burden of proof. *In re Appeal of Kliks*, supra; *Washington-Oregon Investment Company v. Jackson County*, 170 Or 47, 131 P2d 962. However, we believe the taxpayers have, in this instance, sustained this burden. We cannot accept the thesis advanced by the commission that book value is, as a matter of law, the equivalent of true cash value as defined by the statute we have quoted. We think the reasons previously stated explain the inadequacy of such a test or rule. However, there is one other factor that also prompts us to conclude that the rule is equally unacceptable for original assessment. The assessments are to be made as of the value of January 1 of each year. The record in this case reflects that book value as applied to some of the property in question would reflect a cost or price dating prior to the assessment date. This could be for a matter of a few weeks or to an extreme of about two years. Value or costs entered several months prior to the assessment date could not, of necessity, equal the value on that day. This would be particularly true of the widely fluctuating market which has existed in the timber industry for the several years involved in this appeal and prior thereto.

By their cross appeal the taxpayers assert that the relief allowed by the trial court for the tax year 1953-54 is not complete. They contend that there was "discrimination against petitioners in the assessment of their inventories, which assessment was disproportionally high as compared to assessments of real property." To support this charge of discrimination taxpayers submit evidence of an inflationary factor ap-

plied to the assessment of real property to conform to the "normal conditions" requirement of § 110-335, OCLA, as interpreted by *Appeal of Kliks,* supra, which was not applied to the assessment of personal property. They also submit evidence to indicate that the true cash value of real estate was fixed at a lower percentage of market value than was true of personal property; that, accordingly, personal property was assessed at a higher ratio in respect to its true value than real property.

The taxpayers concede that the assessor, and the commission, may use different methods of assessment to determine true cash value of distinct classes of property. They do contend that the method used by the assessor, in this case, resulted in discrimination in the value placed upon their personal property in comparison to the valuation of real property within Multnomah County generally. Taxpayers state: "Petitioners are not complaining about methods, but about results." In this issue the taxpayers also bear the burden of proof. The presumption is that the assessment has been properly made. *Washington-Oregon Investment Company v. Jackson County,* supra (170 Or 58). That case holds that the burden must be met by evidence that is clear and convincing. It is not charged that taxpayers' personal property was assessed by a different method or that a different ratio was applied to it than to other personal property within the county. Our disposition of this cross appeal does not require that we decide that the same ratio of assessment must be applied to real and personal property.

The only evidence before us is the transcript of the record made before a hearing officer of the commission. The record leaves much to be desired in the

way of evidence to establish the contentions made by taxpayers. It contains charts and other documentary evidence prepared by the witnesses purporting to demonstrate the comparative inflationary trends of real property as compared to timber and timber products covering substantial periods of time. The basic knowledge necessary to enable a court to pass upon an economic question of such significance is lacking. It would profit no one to prolong this opinion with an analysis of this evidence. Suffice it to say that the opinions of the witnesses submitted, in some instances based upon questionable sources of information and without reference to recognized, authoritative economic studies, are insufficient to enable a court to accept as a matter of law the inflationary fluctuations of personal property claimed by the taxpayers. The same is most certainly true of the attempt to establish the relationship of value between real and personal property. We have nothing but the record as made before us and by that record we cannot say that the taxpayers have sustained the burden placed upon them to establish the discrimination charged.

■ There remains one other issue to be considered; viz., are taxpayers entitled to interest on the refunds allowed? In *J. I. Case Company v. Chambers,* supra, the court considered this same issue and determined that interest should be paid from 30 days after the filing of the claim for refund. The commission urges that we now overrule the Case decision. We have examined the argument and authority presented and find that little has been added to the commission's argument that was not considered in the case mentioned. The issue was carefully considered at that time and we are not of a mind to change that decision. The circuit

court decrees, entered before the Case decision was handed down, allowed interest from the date the respective payments of taxes were made. The decrees must, therefore, be modified to provide that interest shall be paid from a date beginning 30 days after the claims for refund were made. Except as so modified the decree in each case is affirmed.