Argued September 9, reversed and remanded November 10,
prior opinion corrected December 8, 1954

## KNAPPTON TOWBOAT COMPANY *v.*
## CHAMBERS ET AL.

276 P2d 425
277 P2d 763

*Theodore W. de Looze,* Assistant Attorney General, of Salem, argued the cause for appellants. With him on the briefs were Robert Y. Thornton, Attorney General, and Alfred B. Thomas, Assistant Attorney General, of Salem.

*Alex L. Parks,* of Portland, argued the cause for respondent. With him on the brief were White, Sutherland & Parks, of Portland.

Before ROSSMAN, presiding, and LUSK, BRAND, TOOZE and PERRY, Justices.

PERRY, J.

For the purpose of convenience, we will in this opinion speak of the defendants as the commission.

In the year 1949 by enactment of Chapter 414, Oregon Laws 1949, the legislature provided that all water transport companies, such as the plaintiff, be assessed for taxation purposes by the State Tax Commission. Pursuant to the provisions of this Act, the commission for the year 1950 assessed as a unit the operating properties of the plaintiff (the taxpayer owning and operating watercraft engaged in interstate commerce upon the Columbia and Willamette rivers) in accordance with § 110-513, OCLA, now ORS 308.555, which provided as follows:

"The said commission, for the purpose of arriving at the actual cash value of the property

assessable by it, as herein provided, may value the entire property, both within and without the state of Oregon, as a unit. In case it shall value the entire property as a unit, either within or without the state of Oregon, or both, the commission shall make deductions of the property of said company situated outside of the state, and not connected directly with the business thereof, as may be just, to the end that the *fair proportion* of the property of the said company in this state may be ascertained. If the said commission value the entire property within the state of Oregon as a unit, it shall make deductions of the property of said company situated in Oregon, and assessed by the county assessors, to an amount that shall be just; and for that purpose the county assessors shall be and they are hereby required, if the said commission request the same, to certify to the said commission the assessed value of the property of said companies assessable by them, but such certification of assessed or assessable value is intended to be advisory only, and not conclusive upon the said commission." (Italics ours)

The total amount of the true cash value of plaintiff's operating properties before apportionment was determined at $248,173, and there was originally allocated to the state of Oregon 98% of the unit true cash value. Subsequently the commission discovered an error in computation that corrected to 95.17% the plaintiff's operating properties in the state of Oregon, or a true cash value in this state of $236,186.

The plaintiff being aggrieved with the assessment of the commission appealed to the commission, and failing to receive the relief it believed itself entitled to, appealed to the circuit court of Multnomah county.

The circuit court of Multnomah county reduced the over-all true cash value from $248,173 to $230,000, and by adopting a different allocation formula than that

used by the commission, reduced that part apportioned to the state of Oregon to $199,594. From this adverse decision the commission has appealed.

The contentions of the commission are (1) that the variation in the unit appraisement of the true cash value of $248,173, as found by the commission, and the $230,000, as found by the circuit court, was well within the reasonable exercise of the discretion and judgment of the commission, and did not justify the circuit court in reducing the unit or over-all assessed value by $18,000; (2) that the plaintiff has failed to sustain the burden of proof necessary to overthrow the valuation found by the commission; and (3) that the circuit court erred in changing the allocation formula used by the commission in the tax year 1950.

The plaintiff in seeking relief from the ruling of the commission appealed to the circuit court in accordance with § 110-524, OCLA, as amended by Oregon Laws 1941, ch 9, § 2, which provided in part as follows:

"The appeal shall be heard and determined by the circuit court in a summary manner and shall be determined as a suit in equity, except as herein otherwise provided. Either the appellant or any county to which any portion of the assessment complained of is or may be apportioned, as appellee, shall be entitled to the compulsory attendance of witnesses, and to the production of books and papers. If, upon the hearing, the court finds the amount at which the property was finally assessed by the said commission is its actual cash value, and the assessment was made fairly and in good faith, it shall approve such assessment; but if it finds that the assessment was made at a greater or less sum than the actual full cash value of the property, or if the same was not fairly or in good faith made, it shall set aside such assessment and determine such value, and a certified copy of the order or judgment of the circuit

court shall be sufficient warrant for the apportionment, levying and collecting of taxes against such property and upon such valuation so determined. * * *''

The words of the above statute, ''If, upon hearing, the court finds the amount at which the property was finally assessed by the said commission is its actual cash value, and the assessment was made fairly and in good faith, it shall approve such assessment; but if it finds that the assessment was made at a greater or less sum than the actual full cash value of the property, or if the same was not fairly or in good faith made, it shall set aside such assessment and determine such value * * *'', are the exact words used in § 8, ch 184, Oregon Laws 1913, which section provided for appeals to the circuit court from a county board of equalization.

■ In interpreting the wording of § 8, ch 184, Oregon Laws 1913, supra, in *Weyerhaeuser Land Co. v. Board, etc.*, 85 Or 434, 443, 165 P 1164, we said:

> ''To a large extent an assessment depends upon one's judgment. If the method by which the assessor arrived at the value of the property was correct and the assessment was in good faith fairly made, we are not permitted under the statute as we read it, to pit our judgment as to the value against that of the assessor, although other men of equal ability and fairness might differ in estimating the value of the property. * * * The assessor acts judicially, yet his finding as to the valuation is much the same as the verdict of the jury upon a question of fact.''

Thus it is clear that a court, in order to set aside the figure of an assessment, must be able to say that an assessor or assessing body has arrived at a valuation which lies outside of and beyond an area where reason-

able minds might differ as to the true cash value of the assessed property, or that the assessment was not fairly and in good faith made; that is, that there is not uniformity within the class being assessed.

"True cash value" is defined in the statute, § 110-335, OCLA, as amended by § 4, ch 440, Oregon Laws 1941, as follows:

> "True cash value of all property, whether real or personal, shall be held and taken to mean the amount such property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power and usefulness under normal conditions. * * *"

And § 110-512, OCLA, as amended by § 14, ch 440, Oregon Laws 1941, provides matters to be considered by the assessing body in arriving at the true cash value of the property to be assessed:

> "* * * For the purpose of arriving at the amount and character and true cash value of the property belonging to any such company, the said commission personally may inspect such property, and may take into consideration the statements filed under this act, the reports, statements or returns of said company filed in the office of any board, office or commission of this state, or any county thereof, the earning power of said company, the franchises and special franchises owned or used by said company, and such other evidence of any kind as may be obtainable bearing thereon; provided, that in no event shall any report, statement or return be conclusive upon said commission in arriving at the amount and character and true cash value of the property belonging to any such company."

■ True cash value includes both the tangible and intangible assets of the unit assessed. Therefore, in

any assessment relative to true cash value there must be a basic study of the matter assessed, which information, combined with judgment as to the weight to be given to each element or factor affecting value, results in a finding of the true cash value. Men of equal learning and sound judgment may give greater weight to one factor than to another, thus causing variations in the end-result, so that in all assessments latitudes of judgment must be granted an assessing agency.

■ The taxpayer on an appeal to the courts for relief is faced with the burden of overcoming the presumption that the assessing body has faithfully performed its duty, and this must be done by clear and convincing evidence. *Appeal of Kliks,* 158 Or 669, 76 P2d 974.

■ The rule thus applied to this case requires that the plaintiff show by clear and convincing evidence that the commission failed to consider elements or factors that it should, or considered elements or factors that it should not, or that it gave greater weight to certain factors than men of equal ability would have given in exercising judgment, which has resulted in a readily apparent, or, as some courts have expressed it, a grossly excessive appraisal of its property. This the plaintiff attempts to do by showing (1) that the valuation placed on the tangible property by the commission is higher than reasonable men of equal ability would so appraise it; and (2) that the mathematical formulas used by the commission, combining the tangible and intangible values to obtain true cash values of the property as defined in the statute, are unrealistic and unfair.

We will consider first the valuation placed upon the tangible property by the parties. From the books of the plaintiff it was ascertained that the acquisition cost of the operating properties of the plaintiff was

the sum of $353,828. With this acquisition figure, the plaintiff, using a fixed rate of depreciation permitted by the interstate commerce commission for the purpose of reviewing and determining tariff rates of certain commodities transported by the plaintiff, and adding thereto 20% of the acquisition costs of the tangible property, arrived at a present value of the tangible property in the sum of $193,300. A commission formula based on engineering appraisal studies shows that non-growing utilities kept in good maintenance, with new property being added as necessary, have a true cash value of 53% of the acquisition cost. This in effect amounts to an over-all depreciation of 47%. Using this formula, the commission arrived at a figure of $187,528, to which they added newly purchased and unused materials and supplies carried upon the books of the company in the sum of $6,850 to arrive at a value of intangibles of the company in the sum of $194,378. The commission also used a formula figure of 70% of acquisition costs to show the average tangible value of growing utilities kept in good maintenance with new property being added as necessary.

■ We are constrained to the view that the formulas used by the commission have the greater merit in that the evidence in this case discloses that by using the depreciation methods set up by the interstate commerce commission it is possible to carry on the business of a company with tangible equipment that is fully depreciated, but still giving satisfactory and valuable service. Also, we have some doubt that an addition of 20% of the cost-value as set out above to care for full depreciation of still useable tangible property is truly realistic. However, it is apparent from the result reached that we cannot say the evidence of the plaintiff clearly and convincingly shows the method

used by the commission is in error, or that the judgment of the commission exceeded the latitude granted to it in the appraisal of the plaintiff's property.

Having reached a conclusion as to the value of the tangible assets, or as the plaintiff describes this item of property, the "bare-bones value", the commission then made a study of the unit intangible assets of the plaintiff for taxation purposes, using various engineering evaluation formulas as follows:—For the purpose of evaluating the earning power of the plaintiff, the commission considered the average income of the plaintiff over the immediately preceding period of three and four years respectively. Each average income was capitalized to reflect a six per cent return on invested capital. Based on these studies, and giving equal weight to both tangible assets and earning power, the commission arrived at the following figures as representative of the unit true cash value of the plaintiff's property:

Average income for three years capitalized at 6%, plus tangible assets, divided by 2, plus 10% of average gross revenues for a period of five years, equals $413,003.

Average income for four years capitalized at 6%, plus tangible assets, divided by 2, plus 10% of average gross revenue for a period of five years, equals $475,809.

Seventy per cent of acquisition costs, plus materials and supplies, plus average income for three years capitalized at 6%, divided by 2, equals $397,698.

Seventy per cent of acquisition costs, plus materials and supplies, plus average income for four years capitalized at 6%, divided by 2, equals $460,504.

Other computations were made by the commission, taking into consideration replacement costs and the

use of formulas giving greater weight to earnings than to tangible assets, but we do not believe that it is necessary to extend this opinion by setting them forth, the above examples being given solely for the purpose of showing generally the approach used by the commission in evaluating utilities, which Mr. Manning, the evaluation engineer for the state tax commission, testified had been developed through years of experience by taxing bodies for the purposes of studying the true cash value of growing utilities.

The plaintiff's principal complaint as to the formulas used by the commission in its studies is directed against the capitalization of income at 6%, whereas the true earnings of the plaintiff are in excess thereof. Plaintiff complains because the higher the percentage rate of capitalization, the lower the evaluation figure; whereas a lower percentage rate of capitalization produces a higher evaluation figure.

The difficulty with the plaintiff's position is that the commission does not rely upon any exacting mathematical formula to reach its ultimate decision of true cash value. Some of its studies, as shown by the commission's worksheet, do not include a capitalization of income, and in fact the final result reached by the commission approximates very closely the percentage capitalization figure proposed by the plaintiff.

We have carefully considered the figures and formulas suggested by both the plaintiff and the commission in their attempts at establishing the true cash value of the plaintiff's property as a unit, but as stated in the opinion of the learned and conscientious trial judge, "the ascertainment of value is not controlled by artificial rules. It is not a matter of formulas but there must be a reasonable judgment having its basis in a

proper consideration of all relevant facts". And this we believe was accomplished by the commission.

■ In the case of *Bailey v. Megan*, 102 F2d 651, 654, it is stated:

"If the result arrived at was clearly within the permissible limits of their discretion, the particular method used would seem unimportant. If the result was clearly wrong, the method used would not save it."

And in *Grand Trunk Western R. Co. v. Brown*, 32 F Supp 784, 792, the court said:

"* * * Furthermore, we are convinced that there is no cut and dried formula that the Tax Commission is obliged to follow, nor is there any percentage it must use. The question lies solely in the result, which must not culminate in gross injustice or over-assessment."

■ As we have before stated, the plaintiff is engaged in interstate business, operating in both the state of Oregon and the state of Washington, and the commission having determined the over-all or unit true cash value of all of the plaintiff's properties, it was incumbent upon the commission to determine the portion attributable to each state. § 110-513, OCLA, now ORS 308.555, supra. This the commission did in the following manner:

(1) The total originating-terminating tonnage from a point in Washington to a point in Oregon was apportioned 50% to Washington and 50% to Oregon.

(2) The total originating-terminating tonnage from a point in Oregon to a point in Washington was apportioned 50% to Oregon and 50% to Washington.

(3) The total originating-terminating tonnage from one point in Oregon to another point in Oregon was apportioned 100% to Oregon.

(4) The total originating-terminating tonnage from one point in Washington to another point in Washington was apportioned 100% to Washington.

This general method of apportionment used by the commission, and approved by the trial court, relative to value to be apportioned to each state, has been approved by this court. *Inland Navigation Company, et al. v. Chambers et al.,* 202 Or 274 P2d 104. However, in the above case the formula used by the commission was not that of total originating-terminating tonnage, but was total originating-terminating tonnage in miles traveled, called ton-miles, which simply means the total tonnage moved multiplied by the number of miles which it is carried.

Under the facts of this case, the use of either factor, that of tonnage alone or ton-miles, in carrying out the approved formula for the purpose of determining the amount of property attributable for taxation purposes to each state, would satisfy the Commerce Clause of and the Fourteenth Amendment to the Constitution of the United States. *Ott v. Mississippi Barge Line,* 336 US 169, 69 S Ct. 432, 93 L Ed 585; *Nashville C. & St. L. Ry. v. Browning,* 310 US 362, 60 S Ct 968, 84 L Ed 1254.

■ By § 110-512, OCLA, as amended by § 14, ch 440 Laws of 1941, for the guidance of the commission, the legislature provided:

"When any company owns, leases, operates or uses rail, wire or pipe lines or property within and without this state, if the commission shall value the entire property within and without this state as a unit, it may ascertain the property subject to taxation in Oregon by the proportion which the number of miles of rail, wire, or pipe lines in Oregon, controlled or used by said company * * * bears to the entire mileage of rail, wire or pipe lines, con-

trolled or used by said company * * *. If the value of any property having a situs in this state, of a company operating both within and without the state, cannot fairly be determined in the above manner, said commission may use any other reasonable method to determine the proper proportion of the entire property assessable for taxation in this state.''

The evidence in this case does not convince us that the use of tons alone without considering the distance carried is not a reasonable method to be used in apportioning the property within and without the state.

■ As one of its operations, the plaintiff in this case is engaged in towing logs from Youngs Bay (near Astoria) to a point called Blind Slough (about 15 miles east of Astoria) where the logs are assembled for shipping convenience. Both Youngs Bay and Blind Slough are points upon the Columbia river in the state of Oregon. After being assembled at Blind Slough, the logs are towed to their final destination in the state of Washington. Some of the logs are towed by the plaintiff, and some by other companies. Thus in some instances the plaintiff makes a continuous tow of logs from Youngs Bay, Oregon, to Longview, Washington, an interstate movement; and in other instances it performs this towing operation only from Youngs Bay to Blind Slough, entirely an Oregon operation.

In determining the allocation of values between the states of Oregon and Washington as to this operation, the trial judge in his well-reasoned opinion said:

"The parties have raised the question as to the allocation of a tow from a point such as Youngs River or to Blind Slough (and particularly involving these points) where the log raft is later picked up by another towing company and towed from Blind Slough to a Washington port.

"Plaintiff contends that because such a trip is billed on a through bill-of-lading from the Oregon point to the Washington point that it should be allocated 50 percent to Oregon and 50 percent to Washington.

"The Commission contends that because it is assessing each company separately and because the haul, according to the Commission, is from one Oregon point to another Oregon point that one hundred percent be allocated to Oregon.

"The Commission concedes that if both legs of the journey are made by the same company that the whole trip should be treated as one from an Oregon point to a Washington point and be allocated 50 percent to Oregon and 50 per cent to Washington. The Court concurs with this concession and adopts it as its view.

"However, where two separate and distinct companies perform separate and distinct functions in the overall picture the rule of the Pullman case [141 US 18, 11 S Ct 876] should be employed and each part of the trip should be allocated separately."

We concur in the conclusions of law so reasoned and reached by the trial court. The trial court, however, refused to follow its well-reasoned allocation formula for this particular operation in the tax year in question for the reason that "the records of the plaintiff might not accurately reflect with workable detail the information required to accurately assess movements as hereinabove described". Thus the trial court concluded that for the tax year in question, even though the tow by the plaintiff from Youngs Bay terminated at Blind Slough, the formula rate for this operation should be considered as a shipment from an Oregon point to a Washington point, allotting 50 percent of the operation to Washington and 50 percent to Oregon. In this the trial court erred.

The result thus reached does not reflect a fair apportionment of the plaintiff's Oregon property in this tax year. It is as though a portion of the property of the plaintiff subject to appraisement for taxation purposes in the state of Oregon was omitted from the assessment roll.

The trial court, if it finds that an improper allocation has been made, is required to make one that will reflect reasonably the value of plaintiff's property taxable in the state of Oregon.

Since the trial court was of the opinion that there was a lack of evidence upon which to proceed to a complete determination of this matter, the cause must be remanded for further proceedings not inconsistent with this opinion.

■ Costs are allowed to neither party.

Reversed and remanded.