PAUL B. COLE AND NORMA F. COLE; JACOB KAINEN AND RUTH COLE KAINEN; ELIZABETH C. BUTLER; SPENCER R. COLLINS; R. T. WATTS AND MARTHA B. WATTS; ANNA W. ROSBOROUGH; MARY B. LINDSEY; WILLIAM H. LINDSEY, JR. AND JANE C. LINDSEY; JAMES BARLOW AND ELIZABETH ANN BARLOW; WILLIAM P. WATTS AND ELENOR WATTS; LOUIS SALMON AND ELIZABETH W. SALMON; MARTHA LUCILLE PRATT; MARGARET W. RIEDER; CARL M. MARGOLIN AND SUSIE W. MARGOLIN; HENRY B. CASE, JR. AND ROBERTA W. CASE; CHARLES M. FITTS, JR. AND JANE W. FITTS v. DEPARTMENT OF REVENUE

Richard Bryson, Bryson & Robert, Eugene, represented plaintiffs.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered August 27, 1975.

CARLISLE B. ROBERTS, Judge.

Rosboro Lumber Company, a partnership of the plaintiffs above named, during the fiscal income tax years ending June 30, 1968, 1969 and 1970, elected to treat the cutting of its timber as a sale or exchange for capital gain purposes under the federal Int Rev Code of 1954, § 631(a). During those years, the partnership employed an experienced appraiser to determine the fair market value as of July 1, the first day of each of the fiscal years mentioned, of the timber cut by the partnership during each fiscal year. The values thus determined were used in the partnership return in the computation of the capital gains as shown therein. The taxes upon the values so determined and reported were paid by the plaintiffs and the values and taxes were accepted for federal income tax purposes. However, the Department of Revenue, State of Oregon, defendant herein, rejected the appraised values of the timber as submitted by the partnership and made its own determination thereof and issued notices of deficiency in payment of the personal income taxes of each of the partners, as evidenced by the defendant's Order No. I-73-21 (dated May 4, 1973). The plaintiffs allege in their complaint, as their first cause of action, that the defendant erred as to the fiscal tax year 1967-1968 in refusing to follow the provisions of ORS chapter 316 (1969 Replacement Part) (a) in refusing to accept the determination of the Internal Revenue Service as to the amount of capital gains and ordinary income for that year; and (b) in the alternative, that the defendant erroneously determined the fair market value of the timber for the fiscal year 1967-1968. The same allegations are repeated for the

second and third causes of suit, relating to the years 1968-1969 and 1969-1970, respectively, differing only in dollar amounts. Two issues are thus presented to the court: (1) Is the Department of Revenue entitled to make its own determination of the fair market value of the timber here involved and of the resulting capital gain upon the sale thereof, or must it accept the determination of the taxpayer as approved by the Internal Revenue Service? (2) If the defendant is successful on the first issue, the question remains, what was the "fair market value" of the subject timber (within the meaning of that term in Int Rev Code of 1954, § 631(a)) for each of the tax years in question?

I

Plaintiffs contend that the defendant was powerless to make its own determination of the value of the timber for income tax purposes for the calendar year 1968. The statutory provisions on which the plaintiffs rely in their argument are ORS 316.007, 316.012, 316.032 and 316.062, 1969 Replacement Part, first found in Or Laws 1969, ch 493, applicable to tax years beginning on and after January 1, 1969. For prior taxable years, the Personal Income Tax Act of 1953 continued in full force and effect. Or Laws 1969, ch 493, § 100. The earlier law contained none of the statutory limitations upon which plaintiffs' argument depends in the years 1969 and 1970. However, ORS 316.405, as amended in Or Laws 1967, ch 110, § 1, incorporated by reference a great part of the federal Internal Revenue Code relating to capital gains and losses. The defendant's predecessor, the Oregon State Tax Commission, in its Reg. 316.405, specifically adopted Treas Regs §§ 1.631-1 and 1.631-2, relating to timber cutting.

Referring to the sections of the 1969 statute on which the plaintiffs rely, the first noted is ORS 316.007, which states a policy, "in so far as possible," to make

the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code of 1954, "modified as necessary by the state's jurisdiction to tax; * * *." ORS 316.012 provides that any term used in ORS chapter 316 will have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, "unless a different meaning is clearly required or the term is specifically defined in this chapter." The only part of ORS 316.022 which could be pertinent in this argument is subsection (5), stating that " '[t]axable income' " means the taxable income defined in the Internal Revenue Code, "with such additions, subtractions and adjustments as are prescribed by this [ORS] chapter [316]." ORS 316.032(2) states:

"(2) In so far as is practicable in the administration of this chapter, the department [Department of Revenue] shall apply and follow the administrative and judicial interpretations of the federal income tax law. * * * *Nothing contained in this section limits the right or duty of the department to audit the return of any taxpayer or to determine any fact relating to the tax liability of any taxpayer.*" (Emphasis supplied.)

ORS 316.062 provides that the entire taxable income of a resident of this state is his federal taxable income "with the modifications, additions and subtractions provided in this chapter." ORS 316.117 provides that the taxable income of a nonresident individual is that part of his federal taxable income attributable to sources within this state determined by reference to ORS 316.127.

■ ■ The policy of the Legislative Assembly to follow the administrative and judicial interpretations of the federal income tax law is not a limitation on the defendant as to the discovery of pertinent facts as an aspect of auditing income tax returns. A fac-

tual determination of the fair market value of timber is not an administrative or judicial interpretation of federal income tax law. The last sentence in ORS 316.032 (which should be read with ORS 314.405 et seq.) clearly reserves the power and establishes the duty of the defendant to determine facts relating to tax liability. This conclusion conforms with the statutes and constitutes the only practical answer to the question. It is well known that the Internal Revenue Service is able to audit only approximately two and one-half percent[1] of income tax returns for any given year. The legislature could not have intended the state to rely on federal audits. It is clear that acceptance or apparent approval of an income tax return by the federal service cannot relieve the Department of Revenue of its duty to ascertain facts on which a question has been raised by a state auditor's examination of the return.

On the other hand, once the facts are established, the regulatory procedures of the Internal Revenue Service which control the application, uses and effects of the facts for federal income tax purposes must be followed for Oregon income tax purposes. This conclusion applies to each of the tax years in question in this case, both before and including the effective date of the Personal Income Tax Act of 1969.

Treasury Regulations §§ 1.611-3, 1.631-1 and 1.631-2, relating to capital gains treatment upon the severance of timber (whether owned in fee or claimed under a cutting contract), contain statements of specific procedures to be followed by the taxpayer in the election to utilize the capital gains provision, the determination of fair market value of the timber and the computation of gain or loss under the election. These rules are binding upon the defendant, its auditors and appraisers, after they have ascertained the pertinent facts.

---

[1] Res Inst of Am, Tax Coordinator (July 24, 1975), 1-2.

## II

We turn now to the determination of the value of the subject timber for federal income tax purposes for the years in question. The court has been greatly aided by able counsel, the testimony of excellent appraisers, and the use of a transcript of the testimony on which counsel constructed forceful post-trial briefs. Decision has been made difficult by the fact that the appraiser-witnesses placed substantially different emphasis on aspects of otherwise similar procedures to determine the fair market value of the subject timber. These differing results must be measured by the federal income tax requirements, so far as they can be learned.

Internal Revenue Code of 1954, § 631, provides in part:

"(a) *Election to Consider Cutting as Sale or Exchange.*—If the taxpayer so elects on his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than 6 months before the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the *fair market value of such timber,* and the adjusted basis for depletion of such timber in the hands of the taxpayer. *Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor.* If a taxpayer makes an election under this subsection, such election shall apply with

respect to all timber which is owned by the taxpayer or which the taxpayer has a contract right to cut and shall be binding on the taxpayer for the taxable year for which the election is made and for all subsequent years, unless the Secretary or his delegate, on showing of undue hardship, permits the taxpayer to revoke his election; * * *." (Emphasis supplied.)

For the years in question, Rosboro Lumber Company, a partnership, elected to treat the cutting of its timber as a sale or exchange qualifying for capital gain treatment under the foregoing statute. In order to meet the statutory requirements, it called upon Mr. Sherman Feiss of Bigley & Feiss, Foresters, Inc., of Eugene, Oregon, to appraise the subject timber to determine the fair market value of the timber cut by the partnership as of the first date of each of the fiscal years ending on June 30 of 1968, 1969 and 1970. The values determined were used in the partnership returns and in the computation of capital gains, and were reported on the partnership returns filed with the federal Internal Revenue Service and with the Department of Revenue of the State of Oregon.[2]

The partners' federal returns for the first two years were accepted by the Internal Revenue Service after examination and conference. The return for the third year was apparently accepted upon examination. The defendant, the Department of Revenue, rejected the appraisals as submitted and the determina-

---

[2] The value stated as of the first day of the year replaces the cost basis of the stumpage on the owners' books for *all* income tax purposes. It effects a transfer from ordinary income to capital gains to the extent of the difference between the first-day-of-the-tax-year value and the cost basis. The higher the value placed on the timber, the greater the capital gain on which the owners pay income tax and the lower the ordinary income on which tax is paid. [Tr 27-29.] Rev Rul 62-81, 1962-1 Cum Bull 153.

tions of capital gain and of ordinary income and made its own determinations.

The values of the plaintiffs' appraiser, Mr. Feiss, to which he testified at the time of the trial (and as set out in Pl Exs 1, 2 and 3) were somewhat different from those pleaded in the amended complaint. On motion of the plaintiffs, the modified values have been accepted by the court in lieu of those pleaded, since they conform to the plaintiffs' evidence, and the complaint is deemed to be amended accordingly. (These final values, of course, are determined by multiplying the values set forth in the respective appraisal reports by the volume of timber, by grade and species, as set forth in those reports.) The difference in the modified values and defendant's values submitted to the court is shown in the following table:

| FYE | Rosboro Lumber Company | Dept. of Rev. |
|---|---|---|
| 6-30-68 | $1,944,698.43 | $1,702,694.76 |
| 6-30-69 | 1,662,109.34 | 1,190,250.26 |
| 6-30-70 | 4,518,576.33 | 3,731,166.65 |

In each of the subject years, a high percentage of the total timber cut was taken from the plaintiffs' own fee timber, located in T 17 S, R 4 E, WM, in the eastern part of Lane County. During the cutting year of 1967-1968, plaintiffs also cut on U.S. Forest Service property in eastern Lane County, within 14 or 15 miles of the fee property. In 1968-1969, all the cutting was done on the fee property. In 1969-1970, the pattern of 1967-1968 was followed, except that there were, in addition, two cuttings in Bureau of Land Management properties in the Siuslaw River area, T 19 S, R 7 W, WM, in western Lane County.

Plaintiffs' appraiser, a graduate forester, Mr. Feiss, has been actively engaged in forestry and appraisal work for 28 years. He has made hundreds of fee appraisals of timber. He was well acquainted with

the plaintiffs' company-owned fee timber (which constitutes nearly two-thirds of the timber involved in the case), beginning with his own cruise thereof in 1946. He was also personally familiar with the Forest Service sales in the same vicinity, cut by Rosboro and others (Tr 48).

He selected his comparable sales from the immediate or adjacent operating areas (Tr 46), tying in with the quality, operating conditions and distance to the market of the subject timber. He listed substantially all the sales within the immediate area and time period, made direct comparisons of those sales with the subject timber, and then narrowed them down by direct comparison with the subject; e.g., he found 11 to 16 sales within the neighborhood of the subject timber and, after consideration, reduced the number to those few which he regarded as truly comparable in species, quality and subject to similar logging conditions, with minimum adjustments. His appraisal report set out every necessary fact on which Mr. Feiss relied. The numerous subjective judgments which are implicit in the appraisal of timber were clearly described in his testimony. He was familiar with the federal requirements in the regulations cited above and, from the standpoint of the Internal Revenue Service, successfully complied with them (e.g., checking to make sure that his values were consistent with the weighted average of his comparable sales (Tr 55-59, 108-109, and 120-123) in order to comply with the federal regulations).

This case involves Oregon personal income taxes, not property taxes. However, for the purpose of determining the fair market value of the timber as required by Treas Reg § 1.611-3(f), the defendant's income tax auditor turned to Mr. Wallace Eubanks, the Supervisor of the Timber Section of the Assessment

and Appraisal Division of the Department of Revenue. The Timber Section administers four timber tax laws for ad valorem tax purposes, including all private timber in Western Oregon. Mr. Eubanks is a graduate forester from Oregon State College who has worked as a cruiser in the field in most parts of the state but whose last cruising was done in 1959. He joined the State Tax Commission as a forester upon his graduation from college in 1946 and became supervisor of the Yield Tax Section in 1953. In 1956, he became supervisor of the entire Timber Section and so continues.

Beginning in 1956, the Department of Revenue was given very extensive statutory duties in assessment and taxation of timber and of forest land, including the maintenance of an inventory of almost all of the privately owned merchantable timber in Western Oregon, by ownerships.[9] Annually, it must submit its findings to the various county assessors and board of equalization. ORS 321.622. It must determine annually the harvest values of timber in Eastern Oregon as a basis for the Eastern Oregon severance tax. ORS 321.430.

Mr. Eubanks and his colleagues have necessarily created an imposing piece of administrative "machinery." It collects all available data on sales of timber from the U.S. Forest Service and the federal Bureau of Land Management. Trained foresters, employed by the defendants, are constantly in the field, checking the details of these sales at first hand. Other skilled employees make constant rounds, visiting logging and lumbering operations and examining the operators' records to obtain the values of logs, the cost of transportation thereof, the investment in roads, the cost of

---

[9] See a brief history in *Bump v. Dept. of Rev.*, 4 OTR 156 (1970).

road maintenance, and related information of value.

All these data are filed in the defendant's Timber Section in Salem, Oregon, and processed for quick availability.

Mr. Eubanks set out to determine the true cash value of subject timber as he would for ad valorem tax purposes, except that the "assessment date" was July 1 of each of the fiscal income tax years instead of the January 1 date required for property by ORS 308.210. He used basic sales data and other information that had been gathered by other people, but testified that: "* * * I put the work together and made the decisions." (Tr 337, ll 18-19.) These decisions, of course, included the choice of sales to be used as "comparables" and the adjustments necessary to attain comparability. Like Mr. Feiss, he used the comparable sales approach (more commonly designated the "market data" approach) and considered the sales made by the governmental agencies in the "market area" (and examined such private sales as were available—but found none that he deemed comparable as to type of timber or time).

An important aspect of all timber valuation cases is the "market area" or region from which "comparable sales" may properly be drawn. Plaintiff has noted [Br 7-10] that comparable sales, employed as the basis for a valuation opinion, ought to be carefully selected and not taken at random. As stated in 5 Nichols, *The Law of Eminent Domain,* § 21.3(1), at 21-31 (rev 3d ed, Sackman):

> "* * * Of course only such parcels may be compared where the dissimilarities are reduced to a minimum and allowances made for such dissimilarities. * * *"

The wider the area, the more dissimilarities will appear and the more adjustments must be made. The

importance of the problem of area is illustrated in *Weyerhaeuser Timber Co. v. Tax Com.*, 223 Or 280, 355 P2d 615 (1960).④ The Western Oregon Ad Valorem Timber Tax Law, ORS 321.605 to 321.680, does not set any standard in respect to "area" and the court has not been advised as to any other Oregon statute or decision which would assist in determining the "market area" appropriate to the present case.

The federal regulation, Treas Reg § 1.611-3, containing the procedures for determining the "fair market value" of timber for the purposes of Int Rev Code of 1954, § 631(a), includes the following:

"(f) *Determination of fair market value of timber property.* (1) If the fair market value of the property at a specified date is the basis for depletion deductions, such value shall be determined, subject to approval or revision by the district director upon audit, by the owner of the property in the light of the most reliable and accurate information available with reference to the condition of the property as it existed at that date, regardless of all subsequent changes, such as changes in surrounding circumstances, and methods of exploitation, in degree of utilization, etc. Such factors as the following will be given due consideration:

"(i) Character and quality of the timber as determined by species, age, size, condition, etc.;

"(ii) The quantity of timber per acre, the total quantity under consideration, and the location of the timber in question with reference to other timber;

"(iii) Accessibility of the timber (location with

---

④ *Weyerhaeuser Timber Co. v. Tax Com.*, 223 Or 280, 355 P2d 615 (1960), is a case which sustained the State Tax Commission's definition of "area" as used in ORS 306.127(2) (1955 Replacement Part), a statute which was repealed in Or Laws 1963, ch 225, § 2. Some of the specifics of the repealed ORS 306.127(2) may have been taken into ORS 321.605(6) but the words "volume of timber in the *area*" were not retained.

reference to distance from a common carrier, the topography and other features of the ground upon which the timber stands and over which it must be transported in process of exploitation, the probable cost of exploitation and the climate and the state of industrial development of the locality) ; and

"(iv) The freight rates by common carrier to important markets.

"(2) The timber in each particular case will be valued on its own merits and not on the basis of general averages for regions; however, the value placed upon it, taking into consideration such factors as those mentioned [in this paragraph], will be consistent with that of other similar timber in the region. The district director will give weight and consideration to any and all facts and evidence having a bearing on the market value, such as cost, actual sales and transfers of similar properties, the margin between the cost of production and the price realized for timber products, market value of stock or shares, royalties and rentals, valuation for local or State taxation, partnership accountings, records of litigation in which the value of the property has been involved, the amount at which the property may have been inventoried or appraised in probate or similar proceedings, disinterested appraisals by approved methods and other factors."

It will be noted in (f)(2) that "[t]he timber in each particular case will be valued on its own merits and not on the basis of general averages for *regions*; * * *." (Emphasis supplied.)

The defendant's definition of "market area" is the geographic area in which buyers of and the bidders on sales are a common group of companies or people. It will often include a whole county or several counties. *Bump v. Dept. of Rev.*, 4 OTR 156, 162 (1970). On the basis of studies made by the Timber Section, all of Lane County east of the Coast Range to the summit

of the Cascade Range (with a few minor exceptions represented by divergent drainages on the edges of the county) was deemed one market area. The comparable sales were sought from this whole tract, measuring some 60 by 90 miles [Pl Br 17], and scores of "comparables" were found and used to support defendant's valuation of plaintiffs' timber.

The plaintiffs made a strong attack on the defendant's overall approach, on its adjustments and its conclusions. Although all the witnesses were well trained in the language of timber appraising and of the basic principles and requirements of the work, the principal witness for the plaintiffs and the sole witness for the defendant differed sharply in the specific treatment and weight to be accorded to many of the potential, multitudinous "adjustments" and subjective determinations made by the defendant's witness in determining the "fair market value" of the subject timber.

In its presentation of the case, relying heavily upon the defendant's property tax approach to timber values, it sometimes appeared that defendant forgot that this was an income tax case and that the decision must be made upon the specific nature of plaintiffs' timber (taking note that it was of a superior and expensive quality) and that, in justice to the plaintiffs, the value for income tax purposes must be determined in the same manner as the timber properties of other, like taxpayers, paying the same kind of taxes, was determined for the purposes of the federal income tax law (not for ad valorem taxes).

Issues were raised which related to important questions; e.g., as to the proper forest "area" to be considered; the probability of many different markets existing within defendant's chosen market area; the propriety of the comparable sales chosen; the time period in which sales used as comparable should be

chosen; the fact that plaintiffs' fee timber and its requirements were limited to superior timber (thus involving a "special" market rather than the "general" market utilized by defendant); methods to overcome the distortions in bidding in Forest Service sales, inherent in the Forest Service's requirements and administration thereof (relating to the reflection of road costs in "bid high" and "stat. high" bids and reallocation of specie values because of the "upbidding" found in Forest Service sales when only one species is bid from among a mixture); the effect of adoption by the Bureau of Land Management and the Forest Service of the nearest conversion center for determining log hauling costs as compared to actual hauling costs of plaintiffs; the nature of the log market in the area (or if one actually exists); and the actual, personal knowledge of the two witnesses, Mr. Feiss and Mr. Eubanks, respecting the facts in specific sales.

Pages could be written describing each of these very technical or difficult factual questions. There was lengthy testimony and well-written briefs with regard to each matter mentioned. A reader of decisions, however, would be aided only if he had all of the material before him and the opportunity to digest it. Suffice it to say that the court finds that the plaintiffs have carried the burden of proof. The preponderance of the evidence supports their views. ORS 305.427.

The defendant has failed because of its reliance upon a method which may be acceptable for ad valorem tax purposes but which does not fit into the requirements of the present case in which the requirements of the Internal Revenue Code must be met.[5]

---

[5] It must be emphasized that the specific timber values ascertained for each year for determination of capital gains or losses must also be used, under federal and state income

■ The weight of the defendant's testimony for income tax purposes has been reduced because of the system adopted by the Department of Revenue. Essential data obtained by witnesses unknown to the court or the opposing party, reduced to forms, analyzed by a person who is a stranger to the properties (and consequently unfamiliar as to details so that he is unable to defend against the allegations of errors in the reports which are found by his opponents), gives rise to fatal uncertainty. The court and counsel are overwhelmed by statistics, the worth of which, as facts, cannot be ascertained, since the witness (who has not been on the property for many years) is so largely reliant on hearsay. Nor was any witness present in court to relate the testimony of defendant's forester with the work of its income tax auditor.

■ The court recognizes that all expert witnesses rely on hearsay evidence to a greater or lesser degree in shaping the subjective judgments which constitute their stock in trade. The *judgment* of one appraiser, as compared to another, is all-important as he determines which sales, of varying comparability, merit his reliance, and this same judgment must be exercised in countless choices made necessary by the facts of a timber appraisal. *Starker v. Dept. of Rev.*, 6 OTR 10, 12-13 (1975).

■ It appears to the court that, as between two competent, experienced, straightforward, expert wit-

---

tax requirements "as the cost of such timber to the taxpayer for all purposes for which such cost is a necessary factor." Int Rev Code of 1954, § 631(a). Consequently, when the cut timber is later sold by the taxpayer, either in the form of lumber or manufactured products, ordinary income is determined on the new cost basis. The importance of specific appraisals of the particular timber, as precise as possible, in the actual market, and not some general averaging of values over a wide area, is clear.

nesses, the one who has been on the ground, viewing the subject timber and the timber embodied in a reasonable number of comparable sales, and who is familiar with the requirements of the Internal Revenue Service as to timber values, will be in the better position to declare the values which are required in this case. The witnesses for plaintiffs were closer to the subject than was the witness for the defendant. See *Astoria Plywood Corp. v. Dept. of Rev.*, 6 OTR 40, 50-51 (1975).

The court expresses no judgment as to the propriety of defendant's timber valuation processes for ad valorem tax purposes. Each valuation case is a new contest. "True cash value" or "fair market value" is not a specific figure but a range of figures. Under ORS 305.427, requiring that cases be determined by a preponderance of the evidence, the winning testimony in one valuation case may not meet success in another. *Astoria Plywood Corp. v. Dept. of Rev.*, 6 OTR 57, 59 (1975).

The defendant's Order No. I-73-21 is set aside and held for naught; the income tax deficiencies assessed against the individual plaintiffs for the tax years 1968, 1969 and 1970 which were based on rejection of the timber values on their partnership returns for fiscal years ending June 30, 1968, 1969 and 1970 shall be abated, and any tax payments and interest paid thereon shall be rebated, together with statutory interest on the amounts of tax. Plaintiffs are entitled to their costs and disbursements and reasonable attorney fees.